*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0010P (6th Cir.)
File Name:  00a0010p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

PIK-COAL COMPANY,
     *Plaintiff-Appellant,*

     *v.*

BIG RIVERS ELECTRIC
CORPORATION, EDDIE RAY
BROWN, EMBRO HOLDINGS,
INC., E & M COAL COMPANY,
ROSE BROTHERS TRUCKING,
INC., SOLAR SOURCES, INC.,
WILLIAM H. THORPE, and
SHIRLEY PRITCHETT,
     *Defendants-Appellees.*

No. 98-5974



Appeal from the United States District Court
for the Western District of Kentucky at Owensboro.
No. 94-00049—Jennifer B. Coffman, District Judge.

Argued:  August 12, 1999

Decided and Filed:  January 7, 2000

1

Before:  KRUPANSKY and RYAN, Circuit Judges;
              HULL,* District Judge.

———————————

**COUNSEL**

**ARGUED:**    Harry L. Mathison, KING, DEEP &
BRANAMAN, Henderson, Kentucky, for Appellant. Daniel
Kelley, ICE, MILLER, DONADIO & RYAN, Indianapolis,
Indiana, for Appellees. **ON BRIEF:** Harry L. Mathison,
KING, DEEP & BRANAMAN, Henderson, Kentucky, for
Appellant.  Daniel Kelley, ICE, MILLER, DONADIO &
RYAN, Indianapolis, Indiana, David V. Miller, Greg A.
Granger, BOWERS, HARRISON, KENT & MILLER,
Evansville, Indiana, for Appellees.

———————————

**OPINION**

———————————

KRUPANSKY, Circuit Judge.  The plaintiff-appellant Pik-
Coal Company ("Pik"), an Indiana corporation engaged in the
coal brokering business, has contested the initial forum's
dismissal, for failure to state a claim, of its amended
complaint against defendants-appellees Big Rivers Electrical
Corporation ("Big Rivers"),[1] Eddie Ray Brown ("Brown"),
Embro Holdings, Inc. ("Embro"), E & M Coal Company ("E
& M"), Rose Brothers Trucking, Inc. ("Rose"), Solar Sources,
Inc. ("Solar"), William H. Thorpe ("Thorpe"), and Shirley

———————————

*The Honorable Thomas G. Hull, United States District Judge for the
Eastern District of Tennessee, sitting by designation.

[1]On October 2, 1998, in accordance with the plaintiff-appellant's
stipulation, the Sixth Circuit released defendant-appellee Big Rivers from
this action, because, on September 25, 1996, it had commenced Chapter
11 bankruptcy proceedings. *See* 11 U.S.C. § 362 (automatic stay).

and remote byproducts of Big Rivers' election to contract its coal supply from E & M to the exclusion of Alley-Cassetty. Assuming *arguendo* that the defendants, individually or in tandem, had impinged RICO by corruptly prompting or influencing Big Rivers to so assign Contract 589, the plaintiff nonetheless can neither plead nor prove any proximately-caused losses to itself, because all of its purported financial disadvantages were incidental to those realized primarily by intermediate parties, to wit, Alley-Cassetty and/or Big Rivers. Hence, although the plaintiff may possess potential causes of action against some, or all, of the defendants buttressed by other legal rights or doctrines,[11] it has no colorable RICO claim against any defendant. On *de novo* consideration, the plaintiff's RICO cause (count one) is dismissed with prejudice under Fed R. Civ. P. 12(b)(6) for failure to state a claim; and the plaintiff's three Kentucky law charges (counts two, three, and four) are dismissed without prejudice, in the exercise of the court's discretion to decline supplemental jurisdiction under 28 U.S.C. § 1367(a) & (c)(3), in the absence of original federal jurisdiction over any pending claim following the dismissal of count one.

Thus, the district court's judgment of June 18, 1998 is **AFFIRMED**.

[11]Excepting the federal RICO claim in controversy (count one), this reviewing forum expresses no view regarding the merits, or lack thereof, of any other claim which the plaintiff may have against any defendant or potential defendant.

Pritchett ("Pritchett"). The plaintiff's complaint had alleged that various actions taken by the defendants, individually or in concert with others, dispossessed it of certain contractual coal brokerage commissions, in purported violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"), as well as Kentucky law.

This reviewing court has presumed that the plaintiff's allegations are true upon plenary scrutiny of the lower court's dismissal of count one of the amended complaint for failure to state a claim.[2] The plaintiff has alleged that, during October 1978 [1979?], Big Rivers, the owner and operator of electrical power plants located in western Kentucky, issued a public solicitation for bids on "Contract 589," a long term coal supply contract. In response, several coal brokers submitted sealed competitive bids. The bid of Alley-Cassetty Coal Company ("Alley-Cassetty") was the lowest. Apparently assuming that Big Rivers' consequent award of Contract 589 to Alley-Cassetty was inevitable, the plaintiff, on November 8, 1979, executed a written contract with Solar, the owner and operator of coal mines located in Indiana,

[2]The Sixth Circuit has pronounced:

Whether a district court has correctly dismissed a suit pursuant to Fed. R. Civ. P. 12(b)(6) [failure to state a claim] is a question of law, and therefore subject to *de novo* review. The district court must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. Hence, a judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations.

*Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) (citations omitted).

Accordingly, this appellate forum expresses no view regarding the truthfulness or accuracy of any allegation related in this decision.

under the terms of which the plaintiff would have the exclusive right to "represent" Solar's sale of coal to Big Rivers "for a period of six (6) months and so long as any orders or contracts are in force, including any extension or renewal thereof."

The contract between Pik and Solar did not allude to the Alley-Cassetty bid, however, the parties apparently intended that Pik would act as the broker for Solar's coal furnished to Big Rivers to satisfy Alley-Cassetty's supply obligations to Big Rivers following Big Rivers' anticipated acceptance of Alley-Cassetty's low bid on Contract 589. Pik also mediated a separate understanding between Solar and Alley-Cassetty whereby Solar would supply Big Rivers with the coal required by Contract 589 if Big Rivers awarded that contract to Alley-Cassetty.[3] The Pik/Solar agreement required Solar to pay Pik six percent (6%) of the purchase price (F.O.B. mine) of all coal sold by Solar to Big Rivers during the contractual period.

---

[3]The November 8, 1979 memorial between Pik and Solar posited that Pik "now has in hand certain coal sale orders, which orders can be filled from SOLAR mines," although it did not specifically mention the Alley-Cassetty bid on Contract 589; that "[t]his agreement is not an exclusive sale agreement" and thus "PIK-COAL may sell coal for other parties and SOLAR may sell its coal through other parties;" but that Pik nonetheless shall have an exclusive right to "represent" Solar's coal sales to Big Rivers for a six month period "and so long thereafter as any orders or contracts are in force, including any extension or renewal thereof." Although the precise stipulations of the written compact between Pik and Solar, when considered together, were ambiguous regarding the precise rights and obligations of the signatories (and neither the written contract itself nor the amended complaint revealed which party had drafted that writing), the allegations of Pik's amended complaint, as well as the assertions contained within its appellant's brief, unambiguously reflected Pik's hypothesis that it was deprived of commissions under its contract with Solar solely because Big Rivers awarded Contract 589 to E & M rather than Alley-Cassetty, as evolved below. Stated differently, the plaintiff has theorized that its contractual entitlement to sales commissions from Solar was contingent upon Big Rivers' award of Contract 589 to Alley-Cassetty.

Accordingly, Pik's alleged economic injuries were indirect

---

would have earned if Alley-Cassetty had attained Contract 589. The plaintiff's cryptic conspiracy allegation, which in its entirety recited that "[t]he defendants conspired to violate 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d)," omitted essential allegations detailing an agreement to jointly undertake specific actions illegalized by RICO. *See Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485, 495 (6th Cir. 1990) (remarking that a RICO conspiracy count must plead an agreement to engage in specified conduct which would violate RICO).

Moreover, the amended complaint was devoid of any allegation that Solar, either acting solo or in conjunction with any other defendant(s), had engaged in a *pattern* of racketeering activity, even assuming *arguendo* that it contained allegations of racketeering acts by Solar. *See* 18 U.S.C. § 1962(c) (illegalizing the conduct of an interstate enterprise through a "pattern of racketeering activity"); 18 U.S.C. § 1961(5) (defining a "pattern of racketeering activity" to consist of at least two acts of racketeering). A "*pattern* of racketeering activity"requires related predicate acts of racketeering which continued during a substantial period or which by their nature forebode of future criminal conduct. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240-43 (1989). *See also Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 230 (6th Cir. 1997) (concluding that alleged acts of racketeering which occurred within one month were insufficient to constitute a pattern); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994) (ruling activities which transpired within a seventeen month span inadequate to comprise a "pattern of racketeering activity"); *Vild v. Visconsi*, 956 F.3d 560, 569 (6th Cir. 1992) (characterizing "a few months" of racketeering activity as insufficient to create a continuous "pattern"). In the action *sub judice*, the amended complaint merely charged that, on a single day (December 28, 1979), Solar placed two telephone calls – one to Pik, by which it purported to cancel the agreement under which Pik would supply the embryonic Big Rivers/Alley-Cassetty "contract" with Solar's coal; and one to a truck driver who was not even a Pik employee, by which it allegedly "threatened" him to prevent his haulage of Solar coal "to supply the contract [sic] with Alley-Cassetty." RICO incorporates, *inter alia*, acts illegalized by 18 U.S.C. § 1343 (the federal criminal wire fraud statute) and 18 U.S.C. § 1951 (the federal criminal commercial extortion statute) within its definition of "racketeering activity." 18 U.S.C. § 1961(1). Even if, as contended by the plaintiff, those two averred telephonic communications could be construed as potentially criminalized by sections 1343 and/or 1951 (which is highly doubtful), Pik has, beyond controversy, failed to allege a sufficient RICO "pattern" of such offenses.

agents and alleged co-conspirators caused it to award Contract 589 to an averredly economically unstable enterprise, namely defendant E & M; which in turn harmed Alley-Cassetty financially by forestalling Big Rivers from granting it Contract 589 irrespective of its initially attractive proposal.

Pik had not executed a written contract with either Big Rivers or Alley-Cassetty; rather, it had merely agreed with Solar to "represent" its sale of coal to Big Rivers, subject to conditions, during a specified six month term.[9] The plaintiff's alleged losses were caused by Big Rivers' failure to purchase Solar coal during the six month period of the Pik/Solar contract because Big Rivers elected not to award Contract 589 to Alley-Cassetty. Hence, because Pik had brokered the deal between Alley-Cassetty and Solar upon the assumption that Big Rivers would confer Contract 589 upon Alley-Cassetty, whereas ultimately Big Rivers invested that opportunity in E & M rather than Alley-Cassetty, Pik was (at most) *indirectly* divested, by the defendants' alleged conduct, of inchoate commission rights which it would have possessed under its contract with Solar if Alley-Cassetty had received Contract 589.[10]

---

[9] As developed above, Pik's amended complaint alleged that it had arranged a deal between Solar and Alley-Cassetty whereby Solar would supply Alley-Cassetty, and in turn Big Rivers, with coal as required under Contract 589. However, Pik did not aver that it had commenced any contractual relationship with Alley-Cassetty. In any event, an allegation by Pik that it had a direct contractual relationship with Alley-Cassetty would not have altered the result herein, because Pik's pleaded injuries would remain secondary to losses suffered by Alley-Cassetty allegedly caused by the defendants' charged RICO offenses.

[10] Although Pik alleged that it had a direct contractual relationship with Solar, it has failed to aver any damages directly suffered by it as the result of any conduct by Solar which arguably infringed RICO strictures. Instead, it has merely alleged that it ultimately suffered remote losses because Solar vended coal to Big Rivers via E & M rather than Alley-Cassetty, which deprived Pik of the six percent commission on all Solar coal distributed to Big Rivers during at least a six month term which it

---

However, Big Rivers ultimately did not accept Alley-Cassetty's offer. Instead, in September 1980, it awarded Contract 589 to defendants Brown and E & M.[4] The plaintiff has charged that Brown secured Contract 589 by means of illegal bribes, delivered via the United States mail, to certain employees of Big Rivers, including defendants Thorpe and Pritchett. In exchange for illicit payments, a Big Rivers manager allegedly funneled confidential and proprietary inside information, including the terms of Alley-Cassetty's coal supply proposal, to the Brown defendants. Using that illegally obtained intelligence, coupled with the favorable influence of corrupted Big Rivers employees, the Brown defendants allegedly deprived Alley-Cassetty of Contract 589, which in turn divested Pik of commissions which it would have earned by virtue of its written agreement with Solar contingent upon Alley-Cassetty's attainment of Contract 589.

Pik averred that, between December 20 and 27, 1979, Solar had shipped quantities of coal to Big Rivers in apparent partial performance of Alley-Cassetty's putative obligations under its submitted but as-yet-unaccepted coal supply proposal. However, on or about December 28, 1979, a Solar representative telephoned Pik to "cancel" the November 8, 1979 Pik/Solar agreement. On that same day, a Solar employee purportedly threatened, via telephone, a coal hauler, with the intent of restraining him from transporting coal from Solar's mines in ostensible satisfaction of the incipient but unconsummated contract between Alley-Cassetty and Big Rivers.

In all events, the Pik/Solar contract's six month term expired on May 8, 1980. After that date, on June 16, 1980, Brown, as principal of E & M, secretly submitted a formal coal supply proposal to Big Rivers which underbid the

---

[4] Defendant Brown allegedly was "the ultimate beneficial owner" of defendants E & M, Embro Holdings, and Rose Brothers Trucking. Accordingly, those litigants are sometimes collectively referenced herein as "the Brown defendants."

standing Alley-Cassetty offer. On September 16, 1980, Big Rivers accepted the E & M bid, despite E & M's averred poor contemporaneous financial condition. E & M subsequently discharged its coal supply commitments to Big Rivers by acquiring coal from Solar's mines. Naturally, because Pik had no contractual relationship with Solar after May 1980, it received no commissions for those sales. The Brown defendants' alleged mail frauds, briberies, and kickbacks continued between 1980 and 1992, during which period they allegedly continued to financially influence employees of Big Rivers to award additional coal purchase contracts to them. The plaintiff initially learned of the subject corrupt arrangements in 1993, following publication by the Kentucky Public Service Commission of an investigatory audit report which examined Big Rivers' business activities and practices spanning late 1979 through 1992.

On March 16, 1994, Pik inaugurated the instant action via a four-count complaint in federal district court which charged (1) a RICO conspiracy against all defendants by which they deprived the plaintiff of sales commissions which it would have earned under its November 8, 1979 agreement with Solar if Big Rivers had awarded Contract 589 to Alley-Cassetty instead of E & M (count one), (2) Kentucky law breach of contract against Solar (count two), (3) state law tortious interference with its contractual relations with Solar against all defendants except Solar (count three), and (4) Kentucky law fraud against Big Rivers (count four). The plaintiff requested compensatory damages in excess of $1 million on each cause, plus treble damages on count one; as well as legal interest, costs, and attorney fees. On May 28, 1996, the district court sustained Solar's petition to dismiss count one for failure to assert a valid claim, ruling that Pik had neglected to adequately allege that Solar had committed any predicate act of racketeering or that it had conspired with any co-defendant to commit a predicate act of racketeering. 18 U.S.C. §§ 1961(1) & (5), 1962. On June 13, 1996, the trial forum granted the plaintiff leave to file an amended complaint. On July 9, 1996, the plaintiff lodged its four-count

suffered by the broker-dealers. That is, the conspirators have allegedly injured these customers only insofar as the stock manipulation first injured the broker-dealers and left them without the wherewithal to pay customers' claims. . . . The broker-dealers simply cannot pay their bills, and only that intervening insolvency connects the conspirators' acts to the losses suffered by the nonpurchasing customers and general creditors.

*Id.* at 271 (*citing Associated General Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 534 (1983) (*quoting Southern Pacific Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531, 533 (1918) (per Holmes, J.) ("`The general tendency of the law, in regard to damages at least, is not to go beyond the first step.'")).

The logic of *Holmes* and its Sixth Circuit progeny[8] compels the conclusion that Pik's instant RICO claims were not, and could not be, supported by sufficiently proximate injuries. At most, Pik has alleged, and could only allege, that the defendants' conspiratorial acts directly and proximately injured Big Rivers because the corruption of that defendant's

---

[8] Following *Holmes*, the Sixth Circuit reiterated that a civil RICO claimant must allege and prove that it realized damages directly caused by the defendants' conduct violative of RICO; mere "but for" injuries consequent to intervening losses directly caused to another party are insufficient. *See*, *e.g.*, *Firestone v. Galbreath*, 976 F.2d 279, 285 (6th Cir. 1992) (affirming the district court's dismissal of a count instigated by the heirs of a decedent which alleged that the defendants had committed RICO offenses against the decedent which diminished the value of the decedent's estate, ruling that, because the estate was the party primarily injured by the charged conduct, the alleged harm to the plaintiffs as beneficiaries of that estate was indirect and thus not proximate even if they suffered actual "but for" monetary losses); *Sanders Confectionary Products, Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 487 (6th Cir. 1992) (sustaining the trial court's resolution that, because the defendant's alleged RICO violations which caused a diminution in the value of corporate shares directly harmed the corporation, an injured owner of shares of the company's devalued stock lacked standing to sue those defendants under RICO because its damages were non-proximate).

can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely.

*Id*. at 268-70.  (Citations omitted; emphases added).

In *Holmes*, the defendant securities brokers/dealers fraudulently manipulated certain stock prices, which ultimately caused numerous investors to suffer damages. Concurrently, the defendant securities dealers themselves incurred consequent financial losses which subsequently disabled them from satisfying various obligations to their clients and others.  The Securities Investor Protection Corporation ("SIPC"), a private nonprofit membership corporation chartered by 15 U.S.C. § 78ccc(a)(1) to which the defendants belonged by operation of 15 U.S.C. § 78ccc(a)(2)(A), ultimately satisfied its errant members' undischarged financial commitments to their former customers and general creditors, including erstwhile patrons who had not purchased "watered" stock.  Subsequently, the SIPC claimed reimbursement of those expenditures from the defendants, propped by securities fraud and RICO theories. *Holmes*, 503 U.S. at 261-65 & n.7.  Reversing the Ninth Circuit, the Supreme Court sustained the district court's dismissal of RICO counts which sought recovery for payments which the SIPC had made to the defendants' former clients who had *not* purchased artificially value-inflated shares but instead had suffered losses, which the SIPC eventually compensated, merely by reason of the defendants' overall financial impairments caused by their unrelated wrongful price manipulations of certain equities.  *See id*. at 270.  The Court anchored that ruling in the SIPC's failure to satisfy the proximate causation requirement.  The Court mandated:

> [E]ven assuming, *arguendo*, that it [SIPC] may stand in the shoes of nonpurchasing customers, the link is too remote between the stock manipulation alleged and the customers' harm, being purely contingent on the harm

amended complaint which, *inter alia*, incorporated new allegations against Solar intended to correct the defects identified in the trial bench's May 28, 1996 order.[5]

On June 18, 1998, the trial court dismissed count one for failure to state a claim against *any* defendant, reasoning that Pik had alleged proximate injuries only to Big Rivers and/or Alley-Cassetty but had failed to assert any direct damage to itself caused by any defendant's RICO infraction(s).  *See Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992).  Additionally, the trial court declined to exercise discretionary supplemental jurisdiction over the three pendent state law claims, and accordingly struck the entire action from

---

[5]The material allegations against Solar which Pik had added by amendment to paragraph 5 of count one recited:

(a)  On or about December 28, 1979, the defendant, Solar Sources, Inc., for the purpose of executing a scheme or artifice to defraud, made use of the telephone to call the plaintiff and solicit its assistance in executing that scheme by canceling the contractual agreement to supply Alley-Cassetty with the coal to meet the contractual requirements of BREC [Big Rivers] in violation of 18 U.S.C. § 1343.

(b)  On or about December 28, 1979, the defendant, Solar Sources, Inc., for the purpose of executing a scheme or artifice to defraud, made use of the telephone to call Hurtis Gammon and threaten him so as to prevent him from continuing to haul coal from the mine of Solar Sources, inc. [sic] to supply the contract with Alley-Cassetty in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 1951.

(c)  Despite the fact that it had shipped coal to BREC to supply the Alley-Cassetty contract on December 20, 1979, December 21, 1979, December 22, 1979, December 26, 1979, and December 27, 1979, the defendant, Solar Sources, Inc., entered into an agreement with Brown to supply Brown and E & M with the coal necessary to fulfill Contract No. 589 with BREC without paying the plaintiff commissions on such sales due under an agreement dated November 8, 1979, a copy of which is attached hereto as Exhibit "A".

its docket.  28 U.S.C. § 1367(a) & (c)(3).  Pik noticed a timely appeal[6] on July 13, 1998.

The plaintiff has alleged that the defendants violated RICO section 1962 ("Prohibited activities"), subparts (c) and (d), which state:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.[7]

18 U.S.C. § 1962(c).

It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(d).

Section 1964 created civil remedies for RICO section 1962 infractions:

*Any person injured* in his business or property *by reason of a violation of section 1962* of this chapter may sue therefor in any appropriate United States district

---

[6]The Brown defendants submitted a joint appellees' brief herein on November 12, 1998. Defendant Solar filed a separate appellee's brief on November 20, 1998. Defendant-appellees Thorpe and Pritchett petitioned the instant bench on October 9, 1998, and October 13, 1998, respectively, to adopt the opposition briefs of Solar and the Brown defendants. Those motions are hereby granted.

[7]"A violation of RICO under 18 U.S.C. § 1962(c) requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384, 389 (6th Cir. 1996) (*citing Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)).

court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . .

18 U.S.C. § 1964(c) (emphases added).

Accordingly, to sustain a RICO § 1962 civil treble damages action against any defendant, a plaintiff must plead and prove an actual injury to its business or property "by reason of" a defendant's section 1962 transgression.  The Supreme Court, in *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992), dictated that mere allegation and/or evidence that an injury to the plaintiff would not have occurred "but for" the defendant's alleged RICO violation (that is, that the plaintiff sustained a mere "injury in fact") is insufficient to establish RICO causation.  *Id*. at 265-68.  Instead, the plaintiff must plead and prove "*proximate* causation."  The Court explained:

[A]mong the many shapes this concept [proximate causation] took at common law was a demand for some *direct relation* between the injury asserted and the injurious conduct alleged.  Thus, *a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover.*

. . . .  First, the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors.  Second, quite apart from problems of proving factual causation, recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries.  And, finally, the need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims