In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2750

Josephine Pizzo,

Plaintiff-Appellant,

v.

Bekin Van Lines Company, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 4595--Charles R. Norgle, Sr.,  Judge.

Argued April 3, 2001--Decided July 20, 2001


   Before Posner, Kanne and Rovner, Circuit
Judges.

   Posner, Circuit Judge.  The plaintiff
sued the defendants under RICO, the
Carmack Amendment, and Illinois consumer
protection law and now appeals from the
dismissal of her suit for failure to
state a federal claim. As is customary,
having dismissed the federal claims
before trial the judge relinquished
jurisdiction over the state claims (which
we'll call Pizzo's "state-law fraud
claim"), leaving the plaintiff free to
refile them in state court.

   The implausible allegations of the
complaint are the only facts we have to
go on, so we suppress our skepticism and
assume their truth. Josephine Pizzo, the
plaintiff, lives in southern Illinois.
From a retail furniture store in a
Chicago suburb owned by Mr. and Mrs.
Reznikoff, two of the defendants, Pizzo
bought a nine-piece bedroom set, to be
imported from Italy. The set was not on
display but Pizzo was shown color photos
of the pieces and told that the furniture
was made of solid walnut. The price was
$16,200, to be paid (and it was paid)
before delivery. The furniture arrived in
the store and from there was trucked to
Pizzo's home by the moving-company
defendants. It arrived in damaged
condition. "The cartons containing the
furniture were ripped and torn"--we are

quoting from the complaint--and "several pieces of the furniture were outside of the cartons." What is more, "it was also readily apparent to Ms. Pizzo that the furniture was not, in fact, made of wood"--of "solid walnut, or any other natural wood. It appears to be made of some sort of aerated foam product, similar to (albeit heavier than) styrofoam . . . . Foam furniture is unsuitable for use in Ms. Pizzo's home, and is worth far less than genuine wood furniture. In the absence of Ms. Reznikoff's misrepresentation that the furniture was made of solid wood, Ms. Pizzo would not have purchased it." But, the complaint continues, since the "furniture cost $16,200 and was a total loss . . . , the minimum jurisdictional amount of $10,000 for a Carmack Amendment claim is satisfied."

Pizzo refused to accept delivery, and the furniture was carried away, apparently to a storage facility of one of the moving-company defendants, where it remains awaiting the outcome of this suit. The furniture store mailed Pizzo a copy of the bill of sale, which states that no refunds or exchanges will be made; this mailing is alleged as mail fraud and related mailings or telecommunications are alleged as mail and wire fraud, the various frauds being the "predicate acts"--the "racketeering"-- required for liability under the RICO statute. The Reznikoffs are alleged to have conducted the "enterprise" consisting of their furniture store by a "pattern" of this "racketeering," the pattern being demonstrated by a complaint made by another customer of the store. He claimed that he had bought from them a sofa and chair, both with coil springs, to be imported from Germany, and that the sofa arrived damaged, with no coil springs and with indications that it hadn't been made in Germany, and that Mrs. Reznikoff used the mails (or wire communications) to stop payment on the check she gave him in response to his demand that she refund his money. There is no indication of how the complaint was resolved.

If Pizzo has succeeded in stating a claim under RICO there probably isn't a retail store in the United States that can't be sued successfully under RICO, and thus branded as a "racketeer" and

exposed to liability for treble damages, by a disgruntled customer. All the customer has to do, if Pizzo's RICO claim can survive a Rule 12(b)(6) motion, is allege a misrepresentation by a salesman that induced him to buy a product that he otherwise wouldn't have bought, the use of the mails or of wire communications in connection with the sale or the ensuing dispute, and that another customer was similarly victimized.

The RICO claim fails, although the "enterprise" allegations are sufficient, Cedric Kushner Promotions, Ltd. v. King, 121 S.Ct. 2087 (U.S. 2001); McCullough v. Suter, 757 F.2d 142, 144 (7th Cir. 1985), and we'll assume that the "racketeering" allegations are as well. Mail and wire fraud, 18 U.S.C. sec.sec. 1341, 1343, are predicate acts specified by RICO, 18 U.S.C. sec. 1961(1); Stachon v. United Consumers Club, Inc., 229 F.3d 673, 675 n. 1 (7th Cir. 2000), and we'll not quibble over whether they've been alleged with the particularity required of fraud allegations, Fed. R. Civ. P. 9(b); Emery v. American General Finance, Inc., 71 F.3d 1343, 1348 (7th Cir. 1995), though as a matter of fact, while the place and content of the misrepresentations are specified, the time is not, as the cases also require. Slaney v. International Amateur Athletic Federation, 244 F.3d 580, 599 (7th Cir. 2001); Vicom, Inc. v. Harbridge Merchant Services, Inc., 20 F.3d 771, 777 (7th Cir. 1994). What dooms the RICO claim in any event is that two complaints by dissatisfied customers do not add up to a pattern.

The fact that Pizzo alleges several violations of the mail and wire fraud statutes growing out of her single tiff with the furniture store (ordering the furniture, arranging to deliver it, and mailing the contract--a fourth allegedviolation, that "the mails . . . and wires were used . . . [in that] the furniture was delivered via interstate carrier," makes no sense, since the furniture was not mailed, nor, of course, wired) does not help her to make out the requisite pattern. The Reznikoffs had only a single dispute with her and likewise a single dispute with the other dissatisfied customer, making a total of only two "acts" relevant to whether the defendants' behavior can be characterized as patterned. As explained in Ashland

Oil, Inc. v. Arnett, 875 F.2d 1271, 1278 (7th Cir. 1989), "[RICO] plaintiffs are mistaken to emphasize the raw number of mail and wire fraud violations. Some of the present uncertainty over the pattern element stems from such arguments which depend upon the unusual nature of these two most commonly alleged RICO predicate acts . . . . In mail and wire fraud, each mailing or interstate communication is a separate indictable offense, even if each relates to the same scheme to defraud, and even if the defendant did not control the number of mailings or communications. United States v. Aldridge, 484 F.2d 655, 660 (7th Cir. 1973). See Badders v. United States, 240 U.S. 391, 393 (1916). Thus, the number of offenses is only tangentially related to the underlying fraud, and can be a matter of happenstance." See also Vicom, Inc. v. Harbridge Merchant Services, Inc., supra, 20 F.3d at 781.

And so it is here. There were only two disputes that have given rise to the charge of a pattern of racketeering. And from two disputes five months apart (cf. id. at 780-81, and cases cited there; Pik-Coal Co. v. Big Rivers Electric Corp., 200 F.3d 884, 890 n. 10 (6th Cir. 2000); Hughes v. Consol-Pennsylvania Coal Co., 945 F.2d 594, 611 (3d Cir. 1991)), and no evidence that would enable a trier of fact to extrapolate from them a danger of recurrence, no inference can be drawn that the Reznikoffs are engaged in a pattern of fraudulent activity. We are sure that not all retail stores in the United States are violating RICO; yet we imagine that almost every retail store in the United States has had at least two customers mad enough at it to cry fraud.

The requirement of proving "pattern" is central to the statute. As the Supreme Court explained in H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 242 (1989), "Congress was concerned in RICO with long-term criminal conduct." Unless the requirement of proving a pattern of criminal activity is taken seriously, isolated wrongdoing by employees of a firm would expose it, and perhaps its owners and executives as well, to the heavy sanctions that the statute imposes on violators. A criminal enterprise, as distinct from a normal enterprise that gets into trouble with the law from time to time, is an

enterprise that habitually resorts to illegal methods of doing business. It is an enterprise whose disposition, whose bent, is criminal--as shown by its illegal acts composing a pattern from which such a disposition can be inferred, in much the same way that an individual's generous disposition is inferred from a pattern of generous acts, acts frequent enough and similar enough to enable such an inference. The customer complaints against the Reznikoffs are similar ("related," in the language of the cases), but lack the frequency ("continuity," in the lingo of the RICO cases) necessary to ground an inference that the Reznikoffs habitually use their furniture store as an engine of fraud. See, e.g., id. at 237; Vicom, Inc. v.Harbridge Merchant Services, Inc., supra, 20 F.3d at 779-84; GE Investment Private Placement Partners II v. Parker, 247 F.3d 543, 549 (4th Cir. 2001). So clear is this from the complaint itself that the RICO claim was properly dismissed on the pleadings, as in Vicom and Pik-Coal.

We are not impressed by Pizzo's argument that with pretrial discovery she might discover additional frauds. If the defendants were busy defrauding their customers, Pizzo could have obtained evidence of that without discovery by consulting the Better Business Bureau and the FTC, or by advertising for persons complaining of being defrauded by the defendants. The defendants should not be put to the burden of litigating a RICO suit beyond the pleadings by allegations as thin as in this case.

So much for the RICO claim. The Carmack Amendment to the Interstate Commerce Act, a codification of the common law liability of carriers for damage to shippers' goods, provides a remedy against truckers responsible for damage to a plaintiff's goods unless the trucker can prove that he was free from fault. 49 U.S.C. sec. 14706; Missouri Pacific R.R. v. Elmore & Stahl, 377 U.S. 134, 137-38, (1964); Allied Tube & Conduit Corp. v. Southern Pacific Transportation Co., 211 F.3d 367, 369 (7th Cir. 2000); Hollingsworth & Vose Co. v. A-P-A Transportation Corp., 158 F.3d 617, 618 (1st Cir. 1998). The defendants argue that the Carmack count in Pizzo's complaint is defective for failing to

allege that the furniture was in good condition when they picked it up at the Reznikoffs' store to carry it to her house. They are confused in thus arguing that the elements of a Carmack claim must bepleaded. There are no special pleading rules for such claims. The Federal Rules of Civil Procedure require a plaintiff to plead no more than is necessary to place the defendants on notice of his claim. E.g., Weiss v. Cooley, 230 F.3d 1027, 1033 (7th Cir. 2000); Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1077-78 (7th Cir. 1992). The rules contain no special pleading requirements for Carmack claims; judicial engrafting of such requirements is disfavored, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993); Hammes v. AAMCO Transmissions, Inc., 33 F.3d 774, 778 (7th Cir. 1994); In re NationsMart Corp. Securities Litigation, 130 F.3d 309, 315 (8th Cir. 1997); and no reason is given or occurs to us why such requirements would be appropriate for such claims.

The complaint alleges that the defendant moving companies are carriers within the meaning of the Carmack Amendment, that they transported the furniture that was delivered in damaged condition to the plaintiff, and that the damage exceeded the statutory minimum of $10,000. (This exception to the abolition of minimum amounts in controversy in federal-question cases was, as explained in Ford Motor Co. v. Transport Indemnity Co., 795 F.2d 538, 544 (6th Cir. 1986), a "response to a flood of suits in the United States District Court for the District of Massachusetts brought under the Carmack Amendment . . . which often involved 'minuscule amounts' and forced the district court to function 'as a clearinghouse for the negotiation andsettlement of private debt.'") So far as the defendants' responsibility for the damage is concerned, however, all the complaint alleges is that "one or more . . . or all of them [the carrier defendants]" caused the damage, and those who did not cause it would not be liable for it. But there is cause and there is cause, and in the Carmack Amendment "cause" means "responsible for," and the amendment casts the net of responsibility wide. Pizzo was free to sue the carrier that issued the bill of lading as well as the carrier that delivered the goods, 49

U.S.C. sec. 14706(a)(1), and these carriers would be jointly as well as severally liable to her unless they could show that they were not to blame. Tempel Steel Corp. v. Landstar Inway, Inc., 211 F.3d 1029, 1029-30 (7th Cir. 2000); Project Hope v. M/V IBN SINA, 250 F.3d 67, 75-76 (2d Cir. 2001). The Carmack Amendment is intended to "relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods." Reider v. Thompson, 339 U.S. 113, 119 (1950); PNH Corp. v. Hullquist Corp., 843 F.2d 586, 588-89 (1st Cir. 1988). The issuer of the bill of lading and the delivering carrier are prima facie liable even though the goods may have been damaged by intermediate carriers; it's up to the defendants to put the finger on the guilty carrier. Id. at 588.

But hasn't Pizzo pleaded herself out of court by seeking not the furniture, but her purchase price back? Neither the district court's dismissal of the RICO claim, nor our affirmance of that dismissal, has compelled Pizzo to take the furniture in its damaged condition. She can renew in state court her claim that she was entitled to refuse delivery of the furniture and get her money back. If she prevails and does get her money back, the fact that the furniture is in damaged condition will be no skin off her back; any claim arising from the damage will belong to the Reznikoffs' store, which will be revested with the ownership of the furniture.

Although not so pleaded, Pizzo's Carmack Amendment claim is best understood as an alternative to her RICO and state law claims. If she succeeds in rescinding the purchase of the furniture on grounds of fraud, she will receive her purchase price back and the damage to the furniture will be, as we have said, no damage to her. But if she fails to rescind the purchase (she has already failed, we have held, to do so on the basis of RICO), and cannot get her money back, then she is entitled to the furniture back, and as the owner of the furniture she will bear the loss caused by the damage in transit unless she can obtain damages under the Carmack Amendment from the movers.

There is nothing wrong with alternative pleading, of course, Fed. R. Civ. P. 8(e)(2); Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 189 (3d Cir. 1999), or with filing a contingent claim to avoid the running of the statute of limitations. Swartz v. Meyers, 204 F.3d 417, 420 (3d Cir. 2000); Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999); Nino v. Galaza, 183 F.3d 1003, 1005 (9th Cir. 1999). There was no basis, therefore, for the dismissal of the Carmack Amendment claim-- unless it is plain that the damage to the furniture inflicted by the moving companies cannot exceed $10,000, the minimum required for jurisdiction under the amendment. If the furniture was worth $16,200 on the assumption that it was walnut, it is likely to be worth no more than half of that if it is really a kind of styrofoam; moreover it was not completely destroyed, so that Pizzo contradicts herself in alleging that it was "a total loss." But these things turn out not to be critical, even though the Carmack Amendment does not insure people against the consequences of being defrauded, so that if the furniture was completely worthless even its total destruction by the carrier defendants would not have inflicted damages for which Pizzo could recover under the amendment. See Olsen v. Railway Express Agency, Inc., 295 F.2d 358, 359-60 (10th Cir. 1961); cf. Project Hope v. M/V IBN SINA, supra, 250 F.3d at 77; Camar Corp. v. Preston Trucking Co., 221 F.3d 271, 276-78 (1st Cir. 2000). The fact that the claim is contingent bites here, however. For, should Pizzo's state-law fraud claim fail on the ground that the furniture, in its undamaged state, really was what the Reznikoffs had represented it to be and really was worth the $16,200 that Pizzo paid for it, then it is possible that the damage in transit caused her to lose $10,000 of value.

So the Carmack Amendment claim should not have been dismissed for failure to satisfy the minimum required amount in controversy. Since, however, it is merely a contingent claim, it does not provide a secure basis for retaining under the supplemental jurisdiction of the district court the plaintiff's state-law claim for fraud. The tail would be wagging the dog if the district court ruled on the contingent federal claim before the plaintiff obtained a ruling on whether

she can rescind the sale or used the contingent claim to lever her state-law fraud claim back into federal court. Yet to affirm the district court's relinquishment of jurisdiction over that claim while reversing the dismissal of the Carmack Amendment claim would condemn the plaintiff to split her case against the Reznikoffs between two courts. The district court either should retain jurisdiction over the state-law fraud claim or, if it relinquishes it, should stay further proceedings on the Carmack Amendment until the state-law claim is resolved in the state court. We leave the choice to the district court to make on remand, and affirm its dismissal of the RICO claim.

Affirmed in Part, Reversed in Part, and Remanded with Instructions.