In the

# United States Court of Appeals
## For the Seventh Circuit

No. 07-1438

LIMESTONE DEVELOPMENT CORP.,

*Plaintiff-Appellant*,

*v.*

VILLAGE OF LEMONT, ILLINOIS, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 4390—**Virginia M. Kendall**, *Judge*.

ARGUED NOVEMBER 29, 2007—DECIDED APRIL 1, 2008

Before CUDAHY, POSNER, and EVANS, *Circuit Judges*.

POSNER, *Circuit Judge*. Limestone Development Corporation owned a 55-acre tract of land, in a rural area within the limits of the Village of Lemont (a small town—population 13,000—near Chicago), that it wanted to develop. Limestone charges that the Village and other public bodies, controlled by or acting in cahoots with the mayor, other Village officials, and K.A. Steel Chemicals, another Village landowner, constituted an enterprise whose affairs were conducted through a pattern of racketeering activity, in violation of RICO, and that the Village also vio-

lated the equal protection clause of the Fourteenth Amendment and thus committed a constitutional tort made actionable by 42 U.S.C. § 1983. The defendants' aim in committing these unlawful acts, according to the complaint, was to prevent Limestone from developing its property. The district court dismissed the complaint for failure to state a claim.

Limestone had bought the tract of land, which straddles a canal, in 1989. The tract's northern segment, 26 acres in size, includes an abandoned quarry in which water has collected, forming a small lake. Limestone wanted to develop the northern segment as a commercial marina. An unimproved road, a section of which was owned by the Village, provided the only land access to Limestone's northern parcel. In order to bring in materials for building the marina, Limestone widened the road without seeking the Village's permission. The Village responded by locking a gate across the road, barring Limestone's use of it.

Limestone sued the Village in state court in 1992. The suit was resolved in 1998 by a ruling by the Illinois Appellate Court that Limestone was indeed entitled to use the road—but not for building a commercial marina, because of the impact that such use would have on K.A. Steel Chemicals, which owned and used a section of the road, and on the Village, which besides owning another segment of the road maintained the entire road.

Limestone sued the Village again the following year, 1999, complaining that the Village was failing to maintain the road. It lost. That same year, the Village sued to condemn Limestone's property, but in 2002 it dismissed the suit voluntarily. These also were state court suits.

The complaint in the present case, filed in 2005, repeats the allegations in Limestone's previous suits but adds the following: The RICO enterprise was created in 1993 and operated through 2004. When in 1993 Limestone became delinquent in paying its Village property tax, the defendants made fraudulent representations in an effort to force the sale of the property, though they backed down when Limestone paid the tax. At the same time, the Lemont Park District (one of the members of the RICO enterprise, remember) pretended to be interested in joining with Limestone to build a canal that by connecting the lake on Limestone's property to the Illinois Sanitary and Ship Canal would facilitate the property's development as a marina. By stringing Limestone along, the Park District delayed the development of the property. In 2000, the defendants used an appraisal that they knew to be too low to obtain the state's required permission to launch the eminent-domain proceeding, which they knew would fail—for they had no intention of paying the true market value of the property—but hoped would impede Limestone's development of the property.

All these alleged frauds—"predicate acts" in RICO-speak that if proved would establish the "pattern of racketeering" required for liability under the statute—occurred outside the limitations period for RICO suits, which was four years from the date that Limestone discovered (or should, if diligent, have discovered) that it had been injured by the defendants. *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 152-53, 156 (1987); *Rotella v. Wood*, 528 U.S. 549, 553-60 (2000); *Perry v. Globe Auto Recycling, Inc.*, 227 F.3d 950, 954 (7th Cir. 2000). But then in 2003—three years before the suit was filed and thus within the limitations period—the

Village published in the *Village News* a statement by the mayor, accompanied by a map, announcing the imminent creation of the "Heritage Quarries Park" without disclosing that the park's boundaries "included most of Limestone's property"; and by thus leading "the public and potential purchasers of Limestone's property to believe that the property was owned or controlled by the Village," the statement "impaired and thwarted Limestone's efforts to market its property." Also in that year, the defendants falsely represented (we are just reciting allegations, remember, and not vouching for them) to Limestone that they would conduct an appraisal of its property to serve as a basis for negotiations for its sale to the Village. They had no intention of conducting the appraisal; they wished merely to cause Limestone "to forego other efforts to market its property."

As a result of the defendants' efforts to impede the development and sale of its property, Limestone was eventually forced to sell the property at less than its fair market value. Oddly, the complaint does not say when the sale took place.

Limestone acknowledges that were it not for the predicate acts committed in 2003, its RICO claim would be time-barred. But it contends that those acts not only enable it to escape the bar of the statute of limitations as to them, but by virtue of the "continuing violation" doctrine—a defense to a statute of limitations defense—enable it to revive the time-barred predicate acts and thus obtain redress for the harm caused by them.

That does not make good sense, and is not the law. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 186-87 (1997); *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1466 (7th Cir. 1992).

Like too many legal doctrines, the "continuing violation" doctrine is misnamed. Suppose that year after year, for ten years, your employer pays you less than the minimum wage. That is a continuing violation. But it does not entitle you to wait until year 15 (assuming for the sake of illustration that the statute of limitations is five years) and then sue not only for the wages you should have received in year 10 but also for the wages you should have received in years 1 through 9. The statute of limitations begins to run upon injury (or, as is standardly the case with federal claims, upon discovery of the injury) and is not tolled by subsequent injuries. *Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162, 2169, 2175-76 (2007); *Heard v. Sheahan*, 253 F.3d 316, 318-19 (7th Cir. 2001); *Pollis v. New School for Social Research*, 132 F.3d 115, 119 (2d Cir. 1997).

The office of the misnamed doctrine is to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought. *Heard v. Sheahan*, *supra*, 253 F.3d at 319-20; *Matson v. Burlington Northern Santa Fe R.R.*, 240 F.3d 1233, 1237 (10th Cir. 2001). It is thus a doctrine not about a continuing, but about a cumulative, violation. A typical case is workplace harassment on grounds of sex. The first instance of a coworker's offensive words or actions may be too trivial to count as actionable harassment, but if they continue they may eventually reach that level and then the entire series is actionable. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). If each harassing act had to be considered in isolation, there would be no claim even when by virtue of the cumulative effect of the acts it was plain that the plaintiff had suffered actionable harassment. As we explained at greater length in *Galloway v.*

*General Motors Service Parts Operations*, 78 F.3d 1164, 1166 (7th Cir. 1996) (citations omitted), "Sexual harassment serious enough to constitute unlawful discrimination on grounds of sex is often a cumulative process rather than a one-time event. In its early stages it may not be diagnosable as sex discrimination, or may not cross the threshold that separates the nonactionable from the actionable, or may not cause sufficient distress to be worth making a federal case out of, or may not have gone on long enough to charge the employer with knowl-edge and a negligent failure to take effective remedial measures. (And such knowledge and such failure normally are prerequisites to the employer's being made liable for the harassment.) . . . . If the victim of sexual harassment sues as soon as the harassment becomes sufficiently palpable that a reasonable person would realize she had a substantial claim under Title VII, then she sues in time and can allege as unlawful conduct the entire course of conduct that in its cumulative effect has made her working conditions unbearable."

One can imagine conducting a similar analysis in a RICO case; indeed, since a course of racketeering activity, to amount to a "pattern" and thus be actionable under RICO, requires at least two predicate acts and some temporal continuity, *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 250 (1989); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 and n. 14 (1985); *Management Computer Services, Inc. v. Hawkins, Ash, Baptie & Co.*, 883 F.2d 48, 50-51 (7th Cir. 1989), a RICO claim *cannot* accrue at the time of the first predicate act. *Klehr v. A.O. Smith Corp.*, *supra*, 521 U.S. at 188; *McCool v. Strata Oil Co.*, *supra*, 972 F.2d at 1465. So if that act happened to occur more than four years before the second act, the damage caused by the first act

would still be recoverable in a RICO suit. This is not such a case. A pattern of trying to force out Limestone without having to pay the fair market value of its property was well established years before the 2003 predicate acts. If Limestone wanted to include the old acts in its RICO suit, it had to sue by 2004. A "plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." *Klehr v. A.O. Smith Corp.*, *supra*, 521 U.S. at 190; see also *McCool v. Strata Oil Co.*, *supra*, 972 F.2d at 1456-57; *Potomac Electric Power Co. v. Electric Motor & Supply, Inc.*, 262 F.3d 260, 266 (4th Cir. 2001); *Love v. National Medical Enterprises*, 230 F.3d 765, 772-73 (5th Cir. 2000).

Against this conclusion it is argued that the harm caused by the old acts could not be quantified until Limestone sold its property at a loss. That is false. Thwarting Limestone's efforts to develop its property as a marina, subjecting it to the expense of having to redeem its property to avoid foreclosure for nonpayment of taxes and of having to defend against a baseless condemnation proceeding, and preventing it from selling its property at fair market value are all forms of harm for which courts award damages. The argument is also irrelevant. Difficulty in quantifying damages is cured not by waiving the statute of limitations but by granting equitable relief, which is of course available when the plaintiff's legal remedy (that is, damages) is inadequate.

If the plaintiff doesn't know or have reason to know that he has been injured, the discovery rule clicks in and allows him to delay suing, as we noted in our *Galloway* opinion. But Limestone knew from at least 1993 that it was being injured by the defendants, and from 2000 at

the very latest that it was being injured by a pattern of racketeering activity. It had no excuse for waiting six years after that to sue.

The district judge dismissed the complaint for failure to state a claim, however, and since the statute of limitations is a defense, and a plaintiff is not required to anticipate and refute defenses in his complaint, *United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626, 628 (7th Cir. 2003), the judge may seem to have jumped the gun. Not so. If the allegations of the complaint "show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim," *Jones v. Bock*, 127 S. Ct. 910, 920-21 (2007), and that is the case here, so far as the time-barred claims are concerned.

With the earlier frauds out of the picture, can the two alleged frauds committed in 2003 establish the requisite pattern of racketeering activity? They cannot, because the allegations concerning one of them—the story (with map) in the *Village News*—fail to state a claim of fraud. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), teaches that a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case. (For anticipations, see *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347-48 (2005); *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 528 n. 17 (1983); *Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629, 633 (7th Cir. 2001); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984); 5 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and*

*Procedure* § 1216, pp. 233-34 (3d ed. 2004); *Asahi Glass Co., Ltd. v. Pentech Pharmaceuticals, Inc.*, 289 F. Supp. 2d 986, 995 (N.D. Ill. 2003).) The old formula—that the complaint must not be dismissed unless it is beyond doubt without merit—was discarded by the *Bell Atlantic* decision, 127 S. Ct. at 1969 and n. 8. And much earlier the Supreme Court had warned against permitting a plaintiff "with a largely groundless claim to simply take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value, rather than a reasonably founded hope that the [discovery] process will reveal relevant evidence." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741 (1975).

Under *Bell Atlantic*, the complaint in a potentially complex litigation, or one that by reason of the potential cost of a judgment to the defendant creates the "in terrorem" effect against which *Blue Chip* warned, must have some degree of plausibility to survive dismissal. It is true that the narrowest holding in *Bell Atlantic* is merely that an antitrust complaint charging an agreement between firms not to compete must contain "enough factual matter (taken as true) to suggest that an agreement was made . . . . An allegation of parallel conduct and a bare assertion of conspiracy will not suffice." 127 S. Ct. at 1965-66. The Court was concerned lest a defendant be forced to conduct expensive pretrial discovery in order to demonstrate the groundlessness of the plaintiff's claim. *Id*. at 1967. But the concern is as applicable to a RICO case, which resembles an antitrust case in point of complexity and the availability of punitive damages and of attorneys' fees to the successful plaintiff. RICO cases, like antitrust cases, are "big" cases and the defendant should not be put to the expense of big-case discovery on the basis of a threadbare claim.

*Bell Atlantic* must not be overread. The Court denied "requir[ing] heightened fact pleading of specifics," 127 S. Ct. at 1974; "a complaint . . . does not need detailed factual allegations." *Id*. at 1964. Within weeks after deciding *Bell Atlantic*, the Court reversed a Tenth Circuit decision for requiring fact pleading. *Erickson v. Pardus*, 127 S. Ct. 2197 (2007) (per curiam). A prisoner, proceeding pro se, had complained that he had Hepatitis C, that he was on a one-year treatment program for it, that shortly after the program began the prison officials withheld treatment, and that his life was in danger as a result. That was the context in which the Court said that "specific facts" need not be pleaded. *Id*. at 2200. A complaint must always, however, allege "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, *supra*, 127 S. Ct. at 1974, and how many facts are enough will depend on the type of case. In a complex antitrust or RICO case a fuller set of factual allegations than found in the sample complaints in the civil rules' Appendix of Forms may be necessary to show that the plaintiff's claim is not "largely groundless." *Phillips v. County of Allegheny*, 515 F.3d 224, 231-32 (3d Cir. 2008). If discovery is likely to be more than usually costly, the complaint must include as much factual detail and argument as may be required to show that the plaintiff has a plausible claim. See also *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).

Threadbare is the word for the allegation that the article in the *Village News* injured Limestone and is therefore actionable. The complaint is silent, as are the plaintiff's briefs, on the location of Limestone's property in relation to the proposed park. Limestone could easily have shown this by superimposing its property lines on the map of the park, but it did not do so and its lawyer at

the oral argument could not indicate to us how far the boundaries of Limestone's property overlapped with the park. For all we know, most of the property consists of the quarry lake and none of it will lose value by being surrounded by public parkland. It is not uncommon for private property to adjoin parkland and sometimes it is even surrounded by it, and ordinarily and perhaps in this case as well the value of that property is enhanced. It is also far-fetched to think that potential buyers would be deterred by the fact that a newspaper article showed the property overlapping a public park; any implication that the mayor was claiming that the property belonged to the Village would be quickly scotched by a title search. *Maybe* some promising prospect was scared off, but this is sufficiently implausible to have required a fuller pre-complaint investigation.

The same deficiency attends another critical pleading—the RICO enterprise, about which all that the complaint says is that it "was an association of, between, and among the Village of Lemont, the Lemont Park District, and Lemont Township." They are alleged to have conspired with each other, and with the K.A. Steel Chemicals company, to drive out Limestone. But a conspiracy is not a RICO enterprise unless it has some enterprise-like structure, such as that of a cartel exempt from antitrust law (OPEC, for example—the international oil cartel). E.g., *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 676 (7th Cir. 2000); *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 644 (7th Cir. 1995); *United States v. Richardson*, 167 F.3d 621, 625 (D.C. Cir. 1999). Nowhere in the complaint does one find anything to indicate a structure of any kind. There is no reference to a system of governance, an administrative hierarchy, a joint planning

committee, a board, a manager, a staff, headquarters, personnel having differentiated functions, a budget, records, or any other indicator of a legal or illegal enterprise. *Jennings v. Emry*, 910 F.2d 1434, 1439 (7th Cir. 1990); compare *Burdett v. Miller*, 957 F.2d 1375, 1379-80 (7th Cir. 1992); *United States v. Masters*, 924 F.2d 1362, 1367 (7th Cir. 1991); *United States v. Korando*, 29 F.3d 1114, 1118-19 (7th Cir. 1994); *United States v. Blinder*, 10 F.3d 1468, 1473 and n. 3 (9th Cir. 1993). The Chicago Vice Lords would be embarrassed to have so little structure. See *United States v. Jackson*, 207 F.3d 910, 914 (7th Cir.), vacated and remanded for reconsideration on unrelated grounds, 531 U.S. 953 (2000).

We grant that the view that every RICO enterprise must have a structure is not inevitable. The statute defines the term to include "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). If emphasis is placed on "associated in fact," no structure is necessary, as indeed some courts believe. See *Odom v. Microsoft*, 486 F.3d 541, 551 (9th Cir. 2007) (en banc), and cases cited there. But that truncates the critical statutory phrase—"associated in fact *although not a legal entity*"—misleadingly. The juxtaposition of the two phrases suggests that "associated in fact" just means structured without the aid of legally defined structural forms such as the business corporation. The inference is reinforced by the fact that before "any union or group of individuals associated in fact" in the statute appears a list of legal entities. Without a requirement of structure, "enterprise" collapses to "conspiracy."

So one is not surprised that the Supreme Court has said that "enterprise" is "proved by evidence of an ongoing organization, formal or informal, *and by evidence*

*that the various associates function as a continuing unit.*"
*United States v. Turkette*, 452 U.S. 576, 583 (1981) (emphasis added). Echoing this language, we said in *Richmond v. Nationwide Cassel L.P.*, *supra*, 52 F.3d at 644, that "enterprise" requires proof of "an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." To similar effect, see *Asa-Brandt, Inc. v. ADM Investor Servs., Inc.*, 344 F.3d 738, 752 (8th Cir. 2003); *United States v. Sanders*, 928 F.2d 940, 944 (10th Cir. 1991); *United States v. Tillett*, 763 F.2d 628, 632 (4th Cir. 1985); *United States v. Riccobene*, 709 F.2d 214, 223-24 (3d Cir. 1983).

The allegations in the complaint, detailed though they are, contain no hint of a structure. Questioned at oral argument about the omission, Limestone's lawyer was at a loss to specify any structural features. Nor did he want to conduct discovery on the matter; he was indifferent to the need to prove structure.

We move finally and very briefly to the equal protection claim. It is a "class of one" claim. That is, there is no suggestion of discrimination against a group to which Limestone belongs. The claim is that the Village deliberately and without justification treated Limestone worse than other landowners, specifically K.A. Steel Chemicals, with respect to road maintenance and access. The statute of limitations applicable to suits for constitutional torts under 42 U.S.C. § 1983 in Illinois is two years, *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006), and all the bad acts of which Limestone complains (they are the same acts as alleged in support of the RICO claim) occurred more than two years before the suit was filed.

Limestone claims that the harmful effects "lingered" into the limitations period by depressing the eventual sale price of the property. But this is another misuse of the "continuing violation" doctrine. The discrimination injured Limestone in 1993 and the statute of limitations began to run then. If subsequent discriminatory acts caused additional injury, the limitations period for suing on those acts accrued when the additional injury was discovered. The last of those acts occurred in 2003, more than two years before the suit was filed, and (if the complaint can be believed) they injured Limestone by impeding the development and, failing that, the sale of its property at a good price. That injury started the statute of limitations running. As we said earlier, difficulty in quantifying damages may sometimes be a basis for equitable tolling, but it does not postpone the start of the limitations period. Not the extent, but the fact, of injury starts the period running. E.g., *Goodhand v. United States*, 40 F.3d 209, 212-13 (7th Cir. 1994); *Lancaster v. Norfolk & Western Ry.*, 773 F.2d 807, 821 (7th Cir. 1985); *Mounts v. Grand Trunk Western R.R.*, 198 F.3d 578, 582-83 (6th Cir. 2000); *Industrial Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994). So the district judge was right to dismiss the entire suit.

AFFIRMED.