**FALCO LIME, INC., Appellant,**

v.

**TIDE TOWING COMPANY; Marine Office of America Corporation, Appellees.**

No. 93–2923.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1994.

Decided July 6, 1994.

Rehearing and Suggestion for Rehearing En Banc Aug. 29, 1994.

Frank S. Thackston, Jr., Greenville, MS, argued (C.W. Walker, III, Gary D. McConnell, St. Louis, MO, on the brief), for appellant.

Alan K. Goldstein, St. Louis, MO, argued and on brief for appellee Tide Towing Co.; Ronald E. Fox and Rodney M. Sharp, St. Louis, MO, for appellee Marine Office of America Corp.

Before BOWMAN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

BOWMAN, Circuit Judge.

Falco Lime, Inc., appeals the District Court's [1] judgments in favor of Tide Towing Company and Marine Office of America Corporation (MOAC). We affirm.

At the times relevant to this case, Falco owned numerous barges that it used to move lime along the Mississippi River from its supplier in Ste. Genevieve, Missouri, to its facilities in Vicksburg, Mississippi, and Baton Rouge, Louisiana. Falco and Tide had entered into a contract whereby Falco chartered the M/V Senator Sam, a towboat owned and operated by Tide, to move its barges on the river. During the summer of 1988, the lower Mississippi River was experiencing extremely low water conditions, so the Coast Guard limited navigation on the river to one-way traffic. On July 25, 1988, the Senator Sam, northbound on the river with twelve empty barges in tow, seven of which belonged to Falco, stopped at Memphis to allow downriver traffic to pass. The towboat then found itself unable to move the barges, as they had become grounded on a sandbar.

---

1. The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

The barges remained stranded for some time until a commercial salvor began salvage operations in September, with all seven barges returned to service by October 14, 1988.

In May 1990 Falco filed suit against Tide seeking damages for the stranding. In February 1992 Falco filed an amended complaint, adding causes of action against MOAC. As discussed in greater detail in Part II, only the action for damages against Tide went to jury trial in December 1992, judgment having been entered for MOAC on the basis of the District Court's pretrial rulings.

Falco's first witness at the trial was Fred Farrell, president and co-owner of Falco. On cross-examination, Farrell testified that Falco's towing contract with Tide was negotiated by Falco's marine broker and that he, Farrell, had reviewed it point by point before signing it. Farrell testified that the Senator Sam had a mechanical problem before the grounding and that, as a consequence, the Falco barges were stranded and delayed, resulting in consequential damages to Falco. Counsel for Tide asked Farrell to read a provision of the charter agreement between Falco and Tide for the services of the Senator Sam, and then moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50. After hearing arguments from counsel, the District Court granted the motion and entered judgment as a matter of law for Tide. Trial Transcript at 255–76.

## I.

On appeal as to Tide, Falco challenges the judgment and also argues that the court erred in some of its evidentiary rulings and in holding, as a matter of law, that Falco could not sue for punitive damages in these circumstances. Because the judgment was made as a matter of law, we review the District Court's decision de novo. *See* Fed. R.Civ.P. 50.

■ The relevant portion of the charter agreement that served as grounds for the judgment as a matter of law reads as follows:

Owner will not be liable to Charterer for lost income or profits or any incidental or consequential damages caused by any delay in transportation of barges by the vessel's condition.

Agreement for Charter of Fully Found Motor Vessel (hereinafter Charter Agreement) at ¶ 5. We agree with the District Court that Farrell admitted all of the necessary facts to invoke this unambiguous contract provision. Any questions of fact that remained at the start of the trial were resolved by his unequivocal admissions. On appeal, however, Falco proposes several reasons why the court erred in granting Tide's motion.

■ Falco claims that there was no delay here, but a complete failure to deliver the barges, as the barges were not returned to service for nearly three months and Senator Sam never brought them in. We cannot agree. The unambiguous provision limits "damages caused by *any* delay in transportation of the barges." *Id.* (emphasis added). The provision does not specify that a delay that lasts beyond a certain period of time becomes a failure in transportation, nor does it require that Tide be the one that ends the delay. The court's refusal to allow Farrell to elaborate upon his own understanding of the clause was proper. Parol evidence as to the meaning of a contract is inadmissible when the contract is unambiguous, as this one is. The court properly refused to allow Farrell to attempt to create ambiguities with his proffered testimony, especially given the facts that he already had admitted. *See Unigroup, Inc. v. O'Rourke Storage & Transfer Co.,* 980 F.2d 1217, 1222 (8th Cir. 1992) (applying Missouri law).

■ Falco's contention that Tide was in breach of its "representation that vessel is seaworthy and in good condition," Charter Agreement at ¶ 5, may be well-founded, but that does not require reversal of the judgment as a matter of law. It is true that, ordinarily, a breach of contract will mean that damages, if proved, may be recovered against the breaching party. Here, however, in the very same paragraph, Tide and Falco agreed to a limitation of damages.[2] Parties

---

**2.** Falco argues that the parties could not by this language properly agree to a complete waiver of

liability for Tide's negligence. It is clear from the contract language, however, that the parties

bargaining at arm's length, as Farrell admitted were the circumstances here, surely may limit the recovery of actual damages resulting from a breach that is caused by specified circumstances. The fact that Tide may have breached the contract cannot void the damages limitation agreement. Indeed, we have here the specific kind of situation to which the limitation was intended to apply.

Falco also argues that the delay was not due to the vessel's condition, as ¶ 5 requires, and therefore its consequential damages are recoverable. It is Falco's position that it was Tide's negligence that resulted in the grounding. But Farrell clearly agreed, under oath, that it was the mechanical condition of the Senator Sam that caused the grounding of the barges and that, as a consequence of the grounding, the barges were delayed in reaching their destination. Moreover, Falco's brief on appeal reiterated that position. According to Falco, the Senator Sam's starboard generator "ceased operating," and the backup generator "too was inoperable." Brief of Appellant at 12. Falco argues, "A vessel with one defective generator is simply unseaworthy—the M/V SENATOR SAM's condition was beyond mere garden variety unseaworthiness." *Id.* The brief goes on to explain how the loss of power to the tow ultimately resulted in the grounding of the barges. Falco further noted that "the vessel was inadequately manned; *this also rendered her unseaworthy.*" *Id.* at 11 n. 7 (emphasis added). Falco clearly is arguing that it is the unseaworthy condition of the Senator Sam that precipitated the grounding of Falco's barges.

Falco attempts to circumvent these admissions of unseaworthiness by arguing that Tide's negligence in the maintenance of the vessel and in the hiring and supervision of its employees was the cause of the unseaworthiness of the vessel, and therefore also was the cause of the grounding and the consequent delay. Falco thus would have us read into the clause language that is not there. The damages limitation agreement does not distinguish among potential causes of unseaworthiness, allowing recovery of consequential damages if the vessel is rendered unseaworthy by Tide's negligence but precluding recovery if the tow's unseaworthy condition is the result of some other circumstance.[3] The charter agreement's language is clear: damages are limited if delay is a consequence of the vessel's condition, without regard to the manner in which the vessel came to be in the unseaworthy condition that resulted in delay.

■ Falco challenges the District Court's decision to grant judgment as a matter of law for Tide without permitting rebuttal evidence from Falco, or even redirect examination of Farrell. A Rule 50 motion "may be made at any time before submission of the case to the jury." Fed.R.Civ.P. 50(a)(2). If there remain no unresolved questions of fact on an issue, judgment as a matter of law is appropriate. Given Farrell's admissions under oath, we cannot say that the court erred in granting judgment as a matter of law in favor of Tide. Farrell was Falco's own witness, and as president and co-owner of the company he surely was in a position to know the facts and circumstances of the grounding and to speak for the company. His admissions were made in response to clear and straightforward questions. There was nothing to be gained by permitting him—or other Falco witnesses—to equivocate and attempt to blunt the damage done by the admissions. Even if we were to hold that the court prematurely cut off Fal-

---

did not intend to waive all liability for negligence, and Tide does not so suggest. Falco and Tide agreed only to limit damages, that is, it is only *consequential and lost income damages* that cannot be recovered, and only in certain circumstances is Falco prohibited from recovering such damages. Presumably, Tide was still liable for any other actual damages that may have resulted from the stranding. Moreover, Tide may have been liable for consequential damages resulting from a breach other than a delay, or from a delay in transportation caused by something other than the vessel's condition.

3. Several times on the record Tide admitted responsibility for grounding the barges. Falco contends that, by so admitting, Tide acknowledged that it was liable for consequential damages to Falco and so the contract defense is unavailable to Tide. We reject this argument. Tide admitted only that it was responsible for running the barges aground, not that it was liable to pay damages.

co's proof at trial, Falco has repeated some of the most damaging admissions to this Court, as we explained above. We therefore hold, as a matter of law, that the charter agreement's limitation of damages provision was properly applied in this situation to preclude Falco's recovery, and thus judgment properly was entered in favor of Tide. This disposition makes it unnecessary for us to consider the availability of punitive damages in this case, nor need we review the evidentiary rulings made by the District Court and challenged by Falco.[4]

## II.

In its amended complaint, Falco charged MOAC with breach of its fiduciary obligations to Falco, breach of its duty to deal with Falco in good faith, and fraud and deceit. Falco's complaint also claimed that MOAC was estopped from contesting the reasonableness of Falco's efforts to arrange alternate barge transportation following the grounding.[5]

The amended complaint, in which MOAC first was named as a defendant, was filed February 18, 1992. MOAC moved to continue the trial, which had been set for May 4, 1992. Over Falco's objections, the court granted the motion and continued the trial to December 7, 1992, and also gave MOAC additional time to file a responsive pleading. On April 13, 1992, MOAC moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss for failure to state a claim. On November 30, 1992, the District Court granted MOAC's motion, except as to the claim for breach of fiduciary duty. MOAC filed its answer on December 2, 1992, and moved for judgment on the pleadings on the remaining count. The court treated the motion as one for summary judgment and granted the motion on December 7, the first day of trial.

Thus Falco did not go to trial on any of its claims against MOAC.

■ In its motion to reconsider, filed after the trial, Falco argued that Federal Rules of Civil Procedure 12(b) and 56 required that Falco be given at least ten days to respond to a 12(b)(6) motion that was to be treated as a motion for summary judgment. MOAC responded that it had no objection to Falco's request and on March 3, 1993, the court granted Falco twenty days to file an opposition, which it did, with affidavits. All of Falco's motions to reconsider and vacate the judgments, including the judgment in favor of MOAC, then were denied on June 14, 1993.

We reject Falco's argument that it was not given an adequate opportunity to respond to MOAC's motion. The court did indeed give Falco an opportunity to respond before entering final judgment for MOAC, albeit after Falco filed its motion to reconsider. We acknowledge that the order of events was unconventional, as the response time was not allowed before the court held its hearing on the motion, but before the judgment was made final Falco in fact did receive an opportunity to respond. As far as we can determine from the record, Falco did not ask the District Court to hold another hearing on MOAC's motion after Falco submitted a response. Further, we see no indication that the court's review of Falco's response was perfunctory, as Falco implies.

■ Falco contends, in any case, that the court erred in granting summary judgment in favor of MOAC on its claim for breach of fiduciary duty. We disagree. We have reviewed the record on this issue and the arguments on appeal, and we hold that the District Court did not err in concluding that the relationship between MOAC and Falco, as a matter of law, was not one that

---

4. In its brief, Tide complains about the voluminous material outside the record submitted and cited to by Falco on appeal, and suggests that we dismiss the appeal for this abuse or, at the very least, strike the materials. Tide has filed no such motions with this Court. Nevertheless, we note that in reaching our decision in this case we have not considered any materials that are not properly a part of the record on appeal, as this is not the extraordinary case where enlargement of the record is appropriate. *See Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 988 F.2d 61, 63 (8th Cir.1993).

5. The estoppel argument was rejected by the District Court as not an actionable claim, and that conclusion has not been appealed.

gave rise to liability for breach of fiduciary duty under Missouri common law.[6]

■■■ In its November 30, 1992, order the District Court dismissed Falco's breach of good faith, fraud, and deceit claims as being precluded by Missouri insurance law. On appeal Falco argues that MOAC, as marine manager of insurance for Continental Insurance Company, is not itself an insurer and so Falco's claims are not preempted by Missouri law. Falco itself, however, in its amended complaint adding MOAC as a defendant, alleged that "MOAC insured the seven Falco owned/operated barges ... as well as Falco itself under a policy of marine 'hull' insurance" and also "insured Tide Towing and Tide's M/V SENATOR SAM under a separate tower's liability policy." Amended Complaint at ¶¶ 8, 9. In any case, MOAC has represented itself to this Court as having "provided" and "issued" the insurance policies relevant to this case, Brief of Appellee MOAC at 1, 8, and, apart from some conclusory statements, Falco has no evidentiary or legal support for any argument that MOAC was not an insurer under the terms of the Missouri statutes. The insurance policy documents themselves are not conclusive, as they show that the insurance was issued by the Continental Insurance Company to Nova Trading Company, Falco's marine broker, but MOAC's name also appears on the forms next to Continental's (and Falco is mentioned only occasionally in endorsements as an additional assured, although Falco is not suggesting that it was not the insured). The District Court did not err in resolving this issue in favor of MOAC.

Falco's further argument that this is not an action on an insurance policy (so that the Missouri insurance statutes would be irrelevant) misses the point. The court concluded that this *should* have been a case brought under Missouri statutory insurance law as an action on an insurance policy, and that the common law claims were preempted because of the availability of a statutory cause of action. The duties Falco claims it was owed by MOAC arose from the insurance policies, as the policies were the only basis for a relationship between the parties that conceivably could give rise to any duties, and the claims of fraud and deceit arose from representations allegedly made in reference to those duties.

■■■ The judgments of the District Court as to Falco's claims against both Tide and MOAC are affirmed.[7]

---

6. In its reply brief, Falco protests MOAC's assumption that Falco concedes that Missouri law governs this action, as the District Court found. This was not an issue on appeal raised by Falco in its main brief, and it cannot properly be raised in a reply brief. *See French v. Beard*, 993 F.2d 160, 161 (8th Cir.1993), *cert. denied*, — U.S. ——, 114 S.Ct. 706, 126 L.Ed.2d 672 (1994).

7. The District Court's November 30, 1992, order, which disposed of the bulk of Falco's claims against MOAC, dismissed the fraud claim for failure to plead with particularity as Federal

Rule of Civil Procedure 9(b) and Missouri law require. This ruling and the court's denial of Falco's motion to file an amended complaint were mentioned in Falco's Statement of Issues in its main brief. *See* Brief of Appellant at xiii-xiv. The issues only received a mention in a footnote in the body of the main brief, *id.* at 19 n. 15, and are argued only in the reply brief. Because the issues were not properly presented in Falco's main brief, we do not consider them. *See French*, 993 F.2d at 161.