In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1829

MARY ALICE GREENE,

*Plaintiff-Appellant,*

*v.*

JOHN E. POTTER,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 4:04-cv-04220-GPM—**G. Patrick Murphy**, *Judge.*

ARGUED OCTOBER 28, 2008—DECIDED MARCH 5, 2009

Before BAUER, RIPPLE and EVANS, *Circuit Judges.*

BAUER, *Circuit Judge.* Mary Alice Greene sued John E. Potter as Postmaster General of the United States (the post office), claiming that she was denied overtime opportunities because of her gender in violation of Title VII of the Civil Rights Act of 1964. After Greene and one of her witnesses testified at trial, but before Greene finished her case-in-chief, the district court granted the post office's motion for judgment as a matter of law and later denied Greene's motion to reconsider the judgment and

grant a new trial. Greene appeals both rulings and we affirm.

## I.  BACKGROUND

Greene worked as a mail processing clerk for the post office in Carbondale, Illinois. Postal employees worked five days each week and the post office allowed an employee to volunteer for overtime on the days when she was not regularly scheduled to work. Each quarter, the post office generated a list of employees seeking overtime by day and shift. Employees who chose to work overtime were required to sign up for the overtime-desired list for both of their non-scheduled days. As negotiated by the union, the overtime schedule was supposed to rotate according to the seniority of those employees eligible to work on a given day. However, management was not required to schedule an employee for more than one overtime shift in a week, even if it happened to be that employee's turn in the rotation on both of her non-scheduled days. If an employee was already scheduled to work overtime later in the week, she could be passed over for an earlier overtime shift, even if she was otherwise entitled to it. The postal week began on Saturday.

Greene signed up to work on both of her non-scheduled days, which were originally Sundays and Mondays and later changed to Sundays and Fridays. The Sunday overtime shift was more convenient for Greene because she was caring for her mother and sister, and it was easier for other family members to help with the care-taking on a Sunday compared to a Monday or Friday. Greene claims

to have expressed this preference for Sunday overtime and the reason for it to her supervisor, Dan Rendleman, who was in charge of assigning overtime shifts. Greene was offered overtime on five Sundays and seventeen Mondays or Fridays during the approximately two-year time period at issue.

After navigating the required EEOC procedures, Greene sued the post office for gender discrimination, claiming that she was denied her share of Sunday overtime shifts because she is a woman, either by way of intentional discrimination or disparate impact because Rendleman favored his male friends to the detriment of female employees when scheduling the more desirable Sunday overtime shift. The district court denied the post office's motion for summary judgment and the case went to trial. Greene and one other witness had testified and Greene intended to call three more witnesses when the district court granted the post office's Rule 50 motion for judgment as a matter of law. The district court found that Greene had not, and the testimony from her other witnesses could not, establish sufficient evidence of gender discrimination. The court later denied Greene's Rule 59 motion to reconsider and amend the judgment and grant a new trial.

## II. DISCUSSION

On appeal, Greene argues that the district court acted prematurely when it entered judgment as a matter of law without allowing Greene to finish her case-in-chief. Greene

contends that her remaining witnesses would have presented sufficient evidence for the jury to find in her favor. Green concludes that because the district court improperly cut off her case, it should have granted her motion to reconsider the judgment and grant a new trial. The post office claims that the district court acted appropriately by granting judgment as a matter of law when it became apparent that Greene could not present sufficient evidence for a jury to rule in her favor. Accordingly, the post office argues that the district court properly denied Greene's motion for a new trial.

We review the district court's grant of judgment as a matter of law *de novo* and its denial of Greene's motion for a new trial for abuse of discretion. *Castallano v. Wal-Mart Stores, Inc.*, 373 F.3d 817, 819 (7th Cir. 2004); *Huff v. Sheahan*, 493 F.3d 893, 899 (7th Cir. 2007).

### A.  Judgment as a Matter of Law

Greene first argues that it was procedurally improper for the district court to grant the post office's motion for judgment as a matter of law before Greene had finished her case-in-chief. The post office contends that the court acted appropriately because Rule 50 allows a court to enter judgment as a matter of law as soon as it becomes apparent that a plaintiff cannot establish an essential element of her claim. Rule 50 provides that

> [i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis

> to find for the party on that issue, the court may:
> (A) resolve the issue against the party; and (B) grant
> a motion for judgment as a matter of law against the
> party on a claim or defense that . . . can be
> maintained or defeated only with a favorable finding
> on that issue.

Fed. R. Civ. P. 50(a)(1).

Common practice may be to wait until a party has concluded her case-in-chief to ensure that she has been "fully heard" on the issue, but the Rule provides that "[a] motion for judgment as a matter of law may be made at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). It would be a foolish rule that guaranteed a party the right to present all of its evidence when the effort would clearly be futile. It is proper to enter judgment as a matter of law prior to the close of a plaintiff's case-in-chief so long as it has become apparent that the party cannot prove her case with the evidence already submitted or with that which she still plans to submit. *See Falco Lime, Inc. v. Tide Towing Co.*, 29 F.3d 362, 365-66 (8th Cir. 1994) (plaintiff admitted facts that disproved his case); *see also First Virginia Banks, Inc. v. BP Exploration & Oil, Inc.*, 206 F.3d 404, 407 (4th Cir. 2000) ("right to be 'fully heard' [in Rule 52 context] does not amount to a right to introduce every shred of evidence that a party wishes, without regard to the probative value of that evidence"); Fed. R. Civ. P. 52(c) advisory comm. nn. (Rule 52(c) parallels Rule 50(a)). The underlying question then, and the one to which we now turn, is whether it was apparent that Greene would not be able to prove her claim when the

district court granted the post office's motion for judgment as a matter of law.

### B.   Elements of a Title VII Claim

Title VII forbids an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1). A plaintiff can prove illegal discrimination either directly or indirectly. In this case Greene relies on the indirect burden-shifting method of proof explained in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this approach, Greene must first establish a prima facie case of gender discrimination by proving that: "(1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of her protected class were treated more favorably." *Goodwin v. Bd. of Trustees of the Univ. of Ill.*, 442 F.3d 611, 617 (7th Cir. 2006) (citation omitted).

If Greene can demonstrate these four elements, the burden "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the" adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802. If the post office satisfies this burden of production, Greene must prove that the stated reason is "merely pretext for unlawful discrimination." *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 561 (7th Cir. 2004) (citing *McDonnell Douglas Corp.*, 411 U.S. at 804). "Although

intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) (citation and quotations omitted).[1]

---

[1] The true issue when reviewing this grant of judgement as a matter of law, is not whether Greene was able to jump through the *McDonnell Douglas* Double Dutch, but whether she presented sufficient direct or circumstantial evidence from which a rational jury could find that she was discriminated against because of her gender. *Massey v. Blue Cross-Blue Shield of Illinois*, 226 F.3d 922, 925 (7th Cir. 2000). However, in this case, Greene lacked any such evidence other than the hope offered by *Reeves* that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit [though it does not require] the trier of fact to conclude that the employer unlawfully discriminated." 530 U.S. at 148; *see id.* at 143 ("[A]lthough the presumption of discrimination drops out of the picture once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual." (citations and quotations omitted)). Therefore, it is useful in this situation to consider Greene's case through the *McDonnell Douglas* framework. *See Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002) (examining "evidence of pretext—not because that is dispositive, but because [pretext] could constitute circumstantial evidence that [defendant] intentionally discriminated against [plaintiff]").

### C.  Prima Facie Case

There is some question as to whether Greene suffered an adverse employment action because for many of the dates on which Greene claims she should have worked, she did received overtime later in the week. The parties also dispute whether Greene could meet her prima facie case because her assertion that she should have worked overtime on any specific date relies heavily on a computer model that assumes a number of factors. Despite these obstacles, we assume, for the purpose of this review, that Greene could have presented sufficient evidence to establish her prima facie case.

### D.  Pretext

Even if Greene could have demonstrated a prima facie case, she also needed to present a genuine issue as to whether the post office's stated non-discriminatory reason for its scheduling practices is a pretext for gender discrimination. Title VII only prohibits discrimination based on an illegal motive—in this case, animus toward a specific gender. The precise question then is not whether the employer's justification for the adverse action is a pretext, but whether it is "a pretext for the sort of discrimination prohibited by [Title VII]." *McDonnell Douglas Corp.*, 411 U.S. at 804; *see Reeves*, 530 U.S. at 147 ("[I]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 519 (1993)) (emphasis in original)).

Greene does not have to provide direct evidence of a discriminatory motive as such a burden would deflate the significance of the *McDonnell Douglas* indirect method. *Fischer v. Avanade, Inc.*, 519 F.3d 393, 403 (7th Cir. 2008). But she must create "at least an inference" of illegal discrimination. *Id.* (citations omitted). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit [though it does not require] the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148. However, that is not always the case, as when a plaintiff is able to prove that the employer's stated reason is false, but in so doing, makes clear that the true reason was not illegal discrimination. *Id.* (citations omitted). For example, a plaintiff who claimed he was fired because of age discrimination defeated his own case when, in the course of proving that his employer's stated reason was false, he presented evidence that the true reason he was fired was because his firm was trying to cover up SEC rules violations that he had discovered. *Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1337-38 (8th Cir. 1996).

In this case, the post office claims that the Sunday overtime-desired list was significantly longer than the Monday or Friday overtime-desired lists, but that the need for overtime was greater on Mondays and Fridays when the post office was fully operational. It points out that when an employee signed up for the overtime-desired list, she was required to sign up for both of her non-scheduled days and understood that management had the discretion to have her work on either of those days.

Furthermore, management was not required to have an employee work two overtime shifts in one postal week because that would trigger "penalty overtime" or double-time. The post office claims that even if an employee's "first non-scheduled day was a Sunday, the chances always were that an employee would be needed on the second non-scheduled day, Monday through Saturday, when the [post office] was actually operating." According to the post office, Greene, "for business reasons, was most likely to be scheduled for Monday or Friday over-time, which is exactly what occurred." Greene received five Sunday overtime shifts and seventeen overtime shifts on Mondays or Fridays during the relevant period.

Green contends that the overtime policy negotiated by the union did not allow her to be passed over on a Sunday when it was her turn unless she was *pre-scheduled* to work the following Monday or Friday, which she claims was very infrequent or never occurred. There is some debate about what the overtime policy required, but even if Rendleman's scheduling practices violated the written policy, that does not prove false his explanation that he needed to ensure he had enough employees available to work during the week.

Greene also relies on her own testimony and that of two of her colleagues in an attempt to demonstrate that Rendleman did not schedule simply to satisfy the business needs of the post office. Andrew Polovich, a male employee, testified that he believed he was wrongly passed over for an overtime assignment when Mr. Rendleman was his supervisor. Polovich testified that Rendleman once told him that Rendleman called

Polovich for an overtime shift, however, there was no message on Polovich's answering machine indicating that Rendleman had called. When asked whether he noticed any employees favored for overtime assignments Polovich answered that it appeared Fred Buckingham and Frank Conners worked a lot of weekends. Finally Polovich testified that while Rendleman typically called an employee on the day overtime was needed, Fred Buckingham was told a few days in advance when he would be working weekend overtime shifts and would laugh about it in front of the other workers.

Greene personally testified that Fred Buckingham and Frank Connors received the most Sunday overtime during the relevant period.

Greene also intended to introduce testimony from Lindsey Hyde, another male employee, and in Greene's offer of proof to the district court, she claimed Hyde would give testimony similar to that which he gave at the EEOC hearing. At that hearing, Hyde testified that Rendleman wrongfully denied him overtime. Hyde explained that Rendleman would deliberately bypass employees for overtime assignments and would schedule Buckingham and Conners to work weekends. Rendleman would bypass people on the seniority rotation for the weekend shifts by calling an employee's house and then leaving the phone off the hook so Rendleman could not hear the response. He would also call employees on very short notice who he knew lived too far away to make it in on time and Fred Buckingham would "mysteriously" already be at the post office even though it was not his turn in the rotation. Hyde testified that Buckingham had

foreknowledge that he would be called in. Hyde also
testified that at times he served as a substitute super-
visor and Rendleman would tell him to bring Bucking-
ham in on a Saturday; when Hyde did not call for any
overtime on a Saturday, Rendleman "chewed me out."
Hyde did testify that Rendleman would have someone
call Lil Rathjen, a female employee, when Rendleman
knew she would not be at home, but Hyde believed that
Rendleman did not like Rathjen because she was very
wealthy.

In attempting to discredit the post office's asserted
reason for its scheduling practices, Greene presented
evidence that, if believed, revealed a violation of the
negotiated overtime policy on the part of Rendleman
and proved that Rendleman's explanation that he sched-
uled employees according to the business needs of the
post office was false. However, that same evidence demon-
strated that Rendleman manipulated the overtime pro-
cedures in order to benefit a few of his friends, not out of
a desire to discriminate against female employees. Greene's
evidence of gender discrimination came from two male
employees who claimed that Rendleman treated them
unfairly in order to give overtime to Buckingham and
Connors. Greene's computer model of who should have
worked and who actually worked Sunday overtime
also suggests that Rendleman violated the overtime
procedures to benefit a few select friends. The model
claims that Buckingham and Connors received 14 and 11
more Sunday overtime shifts, respectively, than they
deserved, that two other male employees each received
one more day of overtime than deserved, and that the
other nine employees on the Sunday overtime-desired list,

both male and female, received less Sunday overtime than was proper. Greene has disproved her intentional discrimination claim because her own evidence "conclusively revealed some other, nondiscriminatory reason for the employer's decision." *Reeves*, 530 U.S. at 148. Therefore, there was insufficient evidence for any rational jury to find in her favor, so judgment as a matter of law was proper. *Massey*, 226 F.3d at 925. Additionally, because the evidence Greene submitted and planned to submit actually defeated her claim, it was appropriate to enter judgement as a matter of law before she had concluded her case-in-chief. *See Falco Lime, Inc.*, 29 F.3d at 365-66.

### E.  Disparate Impact

Greene did not mention or explain the significance of her disparate impact claim to the district court in her Rule 59 motion to reconsider the judgment and grant a new trial, nor do we find her claim compelling. As discussed above, the most Greene could demonstrate was that Rendleman treated a few friends more favorably than other male and female employees.

### III.  CONCLUSION

For the reasons set forth above, we AFFIRM the district court's grant of judgment as a matter of law; accordingly, it was not an abuse of discretion to deny Greene's motion for a new trial.