**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Submitted May 20, 2009
Decided December 4, 2009

*Before*

FRANK H. EASTERBROOK, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 09-1091

| | |
|---|---|
| JOSEPH A. KAYE, | Appeal from the United States District |
| *Plaintiff-Appellant.* | Court for the Eastern District of |
| *v.* | Wisconsin. |
| MICHAEL D'AMATO, et al., | No. 05 CV 982 |
| *Defendants-Appellees.* | |
| | Joseph P. Stadtmueller, |
| | *Judge.* |

**O R D E R**

Joseph Kaye filed suit against Michael D'Amato, Julilly Kohler, Lincoln Fowler, Shirley Ferguson, and Lisa Christopherson, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(b)-(d), and its state law counterpart, the Wisconsin Organized Crime Control Act ("WOCCA"), Wis. Stat. §§ 946.80-88 (2005). Kaye, an attorney and real estate developer, claims he was wrongfully denied the opportunity to purchase a certain parcel of land owned by the City of Milwaukee because of Defendants' participation in an illicit land swap agreement. He also alleges, in connection with this questionable exchange of land, that Defendants conspired to rig a neighborhood association election in order to maintain control over decisions regarding the development of land in Milwaukee's East Village Neighborhood. The district court granted Defendants' motion to

dismiss for failure to state a cause of action and imposed sanctions under Federal Rule of Civil Procedure 11. *Kaye v. D'Amato*, 2008 WL 5263746 (E.D. Wis. Dec. 18, 2008). Kaye appeals both orders.

Because we find that Kaye cannot satisfy RICO's continuity requirement, we AFFIRM the district court's orders dismissing the complaint and imposing sanctions.

## I. Background

Milwaukee's Department of City Development ("DCD") and its two sub-departments, the City Planning Commission ("CPC") and the Redevelopment Authority of the City of Milwaukee ("RACM"), handle decisions regarding city-owned real estate. All matters administered by the DCD and its sub-departments, including zoning changes or exemptions, blight designations, and sales of city-owned land, require the approval of the Common Council's sub-committee for Zoning, Neighborhoods, and Development ("ZND"). Development decisions in Milwaukee's Third Aldermanic District, called the East Village Neighborhood, require the additional endorsement of the East Village Association ("EVA").

Defendants held seats on the boards of these entities: Kohler was a Commissioner at the CPC; Fowler was a Commissioner at the RACM; Ferguson and Christopherson were directors of the EVA; and D'Amato was both the alderman of the Third Aldermanic District and the chairman of the ZND. Kaye alleges that Defendants' positions of authority on these boards and their collaboration with each other led to their control over the DCD and EVA, which, in turn, allowed them to control the sales and land development decisions in the East Village Neighborhood.

### A.    The Land Sales

In March 2004, Kaye attempted to purchase a city-owned parcel of land called Kane Place, which is located in the East Village Neighborhood. He alleges the RACM and DCD refused to sell him Kane Place because the land had been promised to Kohler and had been held for her by the DCD, tax free, since 2000. According to Kaye, his proposal for the land was "better" and $500 higher than Kohler's. Kaye contends that the CPC and ZND improperly declared Kane Place blighted and conveyed it to the RACM in order to privately sell it to Kohler. Kohler eventually acquired Kane Place, and various benefits associated with the land, after receiving the required approval of Defendants acting in their official positions.

Kaye alleges that, contemporaneous with the sale of Kane Place to Kohler, the CPC sold another city-owned property, Humboldt Boulevard, in a private sale to a company owned by Fowler. Kaye alleges the property was sold to Fowler despite the existence of a $250,000 bid

from a competing developer who had already secured financing and invested money in redevelopment plans. Kaye further alleges that the DCD stopped the sale to this developer in order to sell the property to Fowler for $10,000.

At some point, Kaye complained publicly about D'Amato's involvement in selling city-owned land to Kohler. As a result, Kaye alleges that D'Amato publicly announced at a June 11, 2004 park dedication that Kaye was "blacklisted" from buying city land in the future. Kaye believes the goal of the public comment was to deter Kaye from any further public criticism of D'Amato.

## B.        The EVA Ordinance and Election

In addition to improperly selling and financing city-owned property, Kaye alleges Defendants engaged in misconduct stemming from the enactment of a zoning ordinance in the East Village Neighborhood. D'Amato and Kohler worked with EVA directors to enact the Conservation Overlay District Ordinance ("the Ordinance"), a restrictive historical preservation zoning ordinance governing the East Village Neighborhood, which prohibits replatting lots or renovating or building homes that look dissimilar from the lots and houses around them. East Village residents who opposed the ordinance spoke against it at a June 8, 2004 EVA meeting.

Tensions surrounding the Ordinance continued, and in an undated incident, D'Amato allegedly removed a "No Overlay District Ald. D'Amato" sign from Ordinance opposition spokesperson Jill Bondar's yard, followed up with a telephone message informing her that he had taken the sign, and told her the Department of Public Works, the division of the City that employs Bondar, was looking for whomever posted the sign. Kaye alleges D'Amato acted with the intent to intimidate or threaten Bondar in order to prevent her from protesting the EVA's and D'Amato's actions with respect to the Ordinance.

In the next EVA Board election, property owners who disapproved of the incumbent EVA directors supported their preferred candidates. Kaye alleges that Kohler, D'Amato, Ferguson and Christopherson fraudulently schemed via e-mail to have their own candidates elected over the objection of the majority. The alleged purpose of this scheme was to ensure that D'Amato and Kohler maintained control of the EVA, which would allow them to continue favorable treatment to preferred developers. The alleged scheme was executed by changing the voting method from the simple majority vote required by the EVA bylaws, to a single transferable voting method. To change the voting method, Kaye alleges that Ferguson sent a single e-mail stating: "We need to vote in this order for At Large nominations: 1 Mark, 2 Todd, 3 Ginger, 4 Norbert – do not deviate from that order. DO NOT vote for anyone else." He also alleges that the neighborhood association was not informed of the new voting method until

minutes before the election.

The new neighborhood association's inaugural meeting was held on November 2, 2005. Although the meeting was announced as a public meeting to address matters of public concern and was held in a public building, three Milwaukee police officers and Ferguson's son allegedly stood at the entrance of the building in order to keep unidentified "disfavored citizens" from entering the meeting. Kaye contends that the officers threatened these unidentified residents with arrest if they tried to enter the meeting. He further alleges that D'Amato's aide, Sam Rowen, was witness to the incident.

Kaye makes numerous other allegations, but they either are not relevant under his RICO or WOCCA claims, do not implicate any Defendants, or do not evidence predicate acts.

### C.    Procedural History

On September 13, 2005, Kaye filed a complaint against Defendants alleging RICO and WOCCA violations. Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and to impose sanctions pursuant to Federal Rule of Civil Procedure 11. The district court dismissed Kaye's complaint and imposed sanctions against him, finding that his allegations had no legal basis and that he should have known as much. Kaye appealed. We declined to hear the appeal for lack of jurisdiction, finding that the orders were not final and appealable. *Kaye v. City of Milwaukee*, 258 F. App'x 17 (7th Cir. 2007). On remand, Kaye filed an amended complaint, and Defendants moved to dismiss. The district court granted the motion, finding (1) that Kaye had pleaded only two predicate acts which amounted to isolated events; and (2) that the two events did not demonstrate the continuity necessary to establish a pattern of racketeering. The district court also granted Defendants' motion to impose sanctions under Federal Rule of Civil Procedure 11. Kaye now appeals.

## II. Analysis

### A.    Legal Standards

We review a district court's order granting a motion to dismiss for failure to state a claim de novo and affirm if the complaint fails to allege facts sufficient to "state a claim for relief that is plausible on its face." *Justice v. Town of Cicero*, 557 F.3d 768, 771 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). The plausibility standard asks for more than a possibility that a defendant has acted unlawfully. *Iqbal*, 129 S. Ct. at 1949. To survive a motion to dismiss, a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*; *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 820 (7th Cir. 2009). We construe a complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts, and drawing all reasonable

inferences in his favor. *Rodriguez*, 577 F.3d at 820.

While dismissal of a RICO claim is appropriate if the plaintiff fails to allege sufficient facts to state a claim that is plausible on its face, the adequate number of facts varies depending on the complexity of the case. *Limestone Dev. Corp. v. Vill. of Lemont, IL*, 520 F.3d 797, 803 (7th Cir. 2008) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 (2007)). Allegations of fraud in a civil RICO claim are subject to the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead all allegations of fraud with particularity. *Slaney v. Int'l Amatuer Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). This requires specifying the time, place, and content of the alleged fraudulent communication. *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998).

A RICO claim is a unique cause of action that does not concern all instances of wrongdoing, but focuses on the limited purpose of "eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006). A RICO plaintiff must prove four elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *Id*. "Racketeering activity" in this case means "any act or threat involving . . . bribery [or] extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year; or any act which is indictable under . . . section 1343 (relating to wire fraud)." 18 U.S.C. § 1961(1). A "pattern of racketeering activity" requires at least two predicate acts within a ten-year period. 18 U.S.C. § 1961(5). Establishing a pattern also requires a showing that "the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

We now turn to the elements in contention in this case.

## B.      Enterprise

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c); *Boyle v. United States*, 129 S. Ct. 2237, 2243 (2009). A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact includes "a group of persons associated together for a common purpose of engaging in a course of conduct" and can be shown "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Boyle*, 129 S. Ct. at 2243.

Kaye alleges the following four enterprises in his amended complaint: (1) the City Plan Commission; (2) the Redevelopment Authority; (3) the ZND; and (4) the EVA.. None of these by itself amounts to a separate RICO enterprise, which requires both interpersonal relationships and a common interest. *See Boyle*, 129 S. Ct. at 2244. Although Kaye labels each of these organizations an enterprise, none of the allegations in his amended complaint suggests the organizations themselves had any interest in Defendants' misconduct. Instead, his allegations merely establish that the Defendants, though associated with these organizations, operated collectively in their individual capacities. However, because we are required to make all reasonable inferences in Kaye's favor, and because there are clearer reasons Kaye's claims fail, we generously infer from his allegations an association-in-fact among Defendants. We assume that Defendants abused their positions on these various boards to band together for the purpose of facilitating an illicit land swap and engaged in other activities with the goal of ensuring other privileges associated with the sale and development of the land.

## C. Predicate Acts

Kaye alleges a number of predicate acts in his amended complaint, two of which the district court found to have been properly pleaded under the Rule 12(b)(6) standard (D'Amato's public "blacklisting" of Kaye and his barring "disfavored citizens" from a public meeting). In total, the alleged predicate acts include allegations of extortion, bribery, and fraud.

### 1. Extortion

Kaye alleges three acts of extortion: (1) D'Amato's public "blacklisting" of Kaye from future real estate dealings with the City; (2) Milwaukee police officers' threats to arrest "disfavored citizens" who tried to enter a public neighborhood association meeting; and (3) D'Amato's removal of Jill Bondar's yard sign and follow-up phone message. He alleges that each of these acts violate the Wisconsin extortion statute, which states:

> Whoever, either verbally or by any written or printed communication, maliciously threatens to accuse or accuses another of any crime or offense, or threatens or commits any injury to the person, property, business, profession, calling or trade, or the profits and income of any business, profession, calling or trade of another, with intent thereby to extort money or any pecuniary advantage whatever, or with intent to compel the person so threatened to do any act against the person's will or omit to do any lawful act, is guilty of a Class H felony.

Wis. Stat. § 943.30 (2005).

Of Kaye's three extortion allegations, the district court found that two meet Wisconsin's definition of extortion. First, Kaye alleges D'Amato publicly "blacklisted" him from future real estate dealings with the city as a means of preventing Kaye's public criticism of D'Amato's involvement in questionable sales of city-owned land. We agree with the district court that this allegation meets Wisconsin's extortion definition because it plausibly could involve the threat of financial injury to Kaye, made by a defendant with the intent to prevent Kaye from engaging in lawful criticism of a public official.

Second, Kaye alleges that Milwaukee police officers barred unidentified "disfavored citizens" from entering the November 2, 2005 EVA meeting by threatening arrest. Kaye asserts that threatening these citizens with arrest in order to prevent them from lawfully attending the meeting was extortion, and that the court should infer D'Amato was responsible even though he was not personally present at the meeting, because one of his aides was a witness to the event. The district court concluded this was a logical inference, albeit not necessarily the correct one, and agreed that Kaye's allegations met Wisconsin's definition of extortion. We, however, believe the district court was excessively generous. In order to find a predicate act of extortion from these allegations, we must infer not only that D'Amato was responsible from his aide's presence, but also that the officers actually barred someone from entering. Kaye alleged in his complaint that "disfavored citizens" were barred from the meeting, but he did not identify a single person who was actually barred. While we are required to make all reasonable inferences in Kaye's favor, the complaint does not contain facts to support these inferences, and without them the claim is not plausible. *See Iqbal*, 129 S. Ct. at 1944. But, as discussed below, because Kaye's RICO claim fails for other reasons, we will assume for our purposes, as the district court did, that "banning" these unidentified citizens sufficiently constitutes a predicate act under RICO.

Third, Kaye alleges that D'Amato engaged in extortion when he removed a political opposition sign from Jill Bondar's yard and subsequently left a phone message informing her that police and city officials where she worked were looking for the person who posted it. The district court found that these allegations did not constitute a sufficiently alleged act of extortion. In making its determination, the court took judicial notice of another case, *Bondar v. D'Amato*, 2008 WL 906129 (E.D. Wis. Mar. 31, 2008), arising from the same event, in which the court found that the sign in question was actually affixed to a city-owned tree located on a public thoroughfare – in front of Ms. Bondar's property, not on it – in violation of a Milwaukee City ordinance, and as such D'Amato was justified in removing the sign. The district court further concluded that D'Amato's message could not reasonably be construed as threatening or harassing. Like the district court, we do not see how removing an illegally posted sign, and leaving a message requesting information about the identity of the person who posted it, meets the statutory definition of extortion.

### 2.      Bribery

Kaye alleges that Kohler and Fowler steered the sales of city-owned Kane Place and Humboldt Boulevard to one another as part of an illicit agreement.  He claims this constitutes two acts of bribery in violation of the Wisconsin bribery statute, which states:

> Any public officer or public employee who directly or indirectly accepts or offers to accept any property or any personal advantage, which the officer or employee is not authorized to receive, pursuant to an understanding that the officer or employee will act in a certain manner in relation to any matter which by law is pending or might come before the officer or employee in the officer's or employer's capacity as such officer or employee or that the officer or employee will do or omit to do any act in violation of the officer's or employee's lawful duty.

Wis. Stat. § 946.10 (2005).

The district court found, and we agree, that Kaye's bribery allegations lack the factual support to constitute sufficiently alleged predicate acts.  Kaye fails to allege even a single communication between Fowler and Kohler or any other fact which would support a reasonable inference of an illicit agreement or that one sale was compensation for the other. Kaye asked the court to infer such an agreement based on his allegations that he offered a "better proposal and higher bid" on Kane Place and that another developer offered a bid twenty-five times higher than what Fowler paid for Humboldt Boulevard, but the district court concluded that the city sold Kane Place to Kohler because her proposed project would be more beneficial to city development and tax revenues, and sold Humboldt Boulevard to Fowler because he was the only bidder.

Kaye argues that the district court improperly relied on information outside the complaint in dismissing his bribery allegations.  The district court, after concluding Kaye had not alleged facts to support his accusations, cited to publicly available city land disposition reports which indicated that the sale of Kane Place to Kohler would result in a better investment and higher tax revenue for the city, and that the higher bidder on Humboldt Boulevard had failed to follow through on the sale, leaving Fowler as the only bidder.

We find no error in the district court's analysis for two reasons.  First, Kaye's bribery accusations were wholly unsupported by factual allegations sufficient to meet the *Twombly* standard.  Second, the land disposition reports are publicly available city documents of which the district court permissibly took judicial notice. *See Pugh v. Tribune Co.*, 521 F.3d 686, 691 (7th

Cir. 2008) ("We may take judicial notice of documents in the public record . . . without converting a motion to dismiss into a motion for summary judgment"); *Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003).

Kaye also argues that the district court cannot now find his bribery allegations implausible when, in its first dismissal order, it found they were sufficiently pleaded. While the district court did, in fact, "presume" the bribery allegations to be properly pleaded in the first complaint, it did so in an effort to not waste time on a complaint that was clearly deficient. In its order dismissing Kaye's amended complaint, the district court explained that "Kaye's first complaint was so plainly lacking that the court had ample reason to dismiss it without unnecessarily expending even more time by examining fully the sufficiency of th[e] bribery claims." *Kaye v. D'Amato*, 2008 WL 5263746, at *5 (E.D. Wis. Dec. 18, 2008).

After more closely examining the bribery allegations in Kaye's amended complaint, the district court correctly concluded that Kaye has made no factual assertions that reasonably support an inference of bribery. Without additional factual allegations – at a minimum, an allegation of some communication between Fowler and Kohler indicating an agreement to "swap" the land – Kaye has not "nudged his claims . . . across the line from conceivable to plausible." *Iqbal*, 129 S. Ct. at 1952 (citation omitted).

### 3.      Fraud Claim Inadequate

Like most of Kaye's claims, his allegation of fraud fails to meet the definition of a RICO predicate act. Kaye alleges that Defendants used e-mail to organize themselves and create a new voting method in order to elect people to the EVA Board who would otherwise not have received a majority vote. Supposedly, the new method violated the EVA bylaws, which required a simple majority vote, and Defendants announced the new method to voters minutes before the election, presumably so voters would not have time to object. These allegations do not amount to a claim under the federal wire fraud statute.

An act of wire fraud requires a showing that (1) Defendants participated in a scheme to defraud; (2) Defendants intended to defraud; and (3) Defendants used wires in furtherance of the fraudulent scheme. *United States v. Radziszewski*, 474 F.3d 480, 484-85 (7th Cir. 2007). "A scheme to defraud requires 'the making of a false statement or material misrepresentation, or the concealment of material fact.'" *United States v. Sloan*, 492 F.3d 884, 890 (7th Cir. 2007) (quoting *United States v. Stevens*, 421 F.3d 503, 507 (7th Cir. 2005).

The district court noted that Kaye failed to allege any misrepresentation, omission, or half-truth, and alleged only one communication – an e-mail that was not directed toward any

of the victims of the alleged scheme, nor alleged to be dishonest.  Although a wire communication need not itself contain a misrepresentation, *Schmuck v. United States*, 489 U.S. 705, 712-15 (1989), it must be "incidental to an essential part of the scheme."  *Pereira v. United States,* 347 U.S. 1, 8 (1954).  The district court found, and we agree, that Kaye has not alleged a situation in which anyone was misled or fraudulently induced to engage in activity to their detriment.

Although Kaye's allegations, if true, may amount to questionable conduct on the part of Defendants, "[n]ot all conduct that strikes a court as sharp dealing or unethical conduct is a 'scheme or artifice to defraud'" as those terms are used in the mail and wire fraud statutes. *Reynolds v. East Dyer Dev.*, 882 F.2d 1249, 1252 (7th Cir. 1989) (holding that seller's failure to disclose known soil conditions was not a scheme to defraud where seller did not affirmatively lie to buyer).  Kaye's allegation of wire fraud is supported by a single e-mail sent to supporters of the new voting method, and contained no misrepresentations or false statements.  This is not enough to sufficiently allege a predicate act of wire fraud.          Kaye also alleges various acts of honest services fraud relating several transactions surrounding the alleged land swap.  However, the allegations fail to meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard.  Specifically, Kaye failed to allege facts including who, what, when, where, and how, for each of his honest services fraud allegations. *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (allegations of fraud require pleading who, what, when, where, and how); *Slaney*, 244 F.3d at 597 (RICO plaintiff must describe acts of fraud with specificity and state the time, place, and content of the false representations, the method by which the representations were communicated, and the identities of the parties to the representations).

Of the numerous predicate acts alleged by Kaye, the district court concluded that only two acts of extortion were sufficiently pleaded.  As discussed previously, the extortion claim involving the police officers was specious, and without it Kaye cannot establish the "pattern of racketeering activity" required by RICO.  *See H.J.*, 492 U.S. at 237 (a pattern of racketeering requires a minimum of two predicate acts).  However, because the deficiencies in Kaye's RICO claim only become clearer as we engage in further analysis, we will continue under the district court's assumption that two predicate acts were adequately pleaded.

### D.	Pattern of Racketeering Activity

In addition to requiring at least two predicate acts, a pattern of racketeering requires a plaintiff show "the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity."  *H.J.*, 492 U.S. at 239; *Gamboa*, 457 F.3d at 705-06.  We agree that the two predicate acts the district court found sufficient could be considered related in the sense that they shared the common objectives of influencing decisions with respect to city-owned

land, and keeping Kaye and others from protesting D'Amato's involvement in those matters. However, Kaye has not met the additional requirement of continuity.

In addition to showing that acts are related, Kaye must demonstrate "that they amount to or pose a threat of *continued* criminal activity." *H.J.*, 492 U.S. at 239 (emphasis added); *Gamboa*, 457 F.3d at 705-06. The continuity requirement can be a closed-ended or an open-ended concept, "referring either to a closed period of repeated conduct, or to past conduct that by its very nature projects into the future with a threat of future repetition." *H.J.*, 492 U.S. at 241. Open-ended continuity is not an issue here because, as conceded by Kaye, Defendants no longer hold their public offices. The question, therefore, is whether Kaye has shown closed-ended continuity.

In order to demonstrate closed-ended continuity, Kaye must allege "a series of related predicates extending over a substantial period of time." *Id*. "Predicate acts extending over a few weeks or months and *threatening no future criminal conduct* do not satisfy this requirement[.]" *Id.* (emphasis added). Similarly, while a minimum of two predicate acts are required, two acts are normally not sufficient. *H.J.*, 492 U.S. at 236-38; *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 922 (7th Cir. 1992). "The underlying rationale is that the duration and repetition of the criminal activity carries with it an implicit threat of continued criminal activity in the future." *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1022-23 (7th Cir. 1992). Closed-ended continuity is properly alleged only by "demonstrating a closed-ended conspiracy that existed for such an extended period of time that a threat of future harm is implicit." *Spitz*, 976 F.2d at 1023; *Roger Whitmore's Auto. Servs., Inc. v. Lake County, IL*, 424 F.3d 659, 673 (7th Cir. 2005).

In determining whether closed-ended continuity exists, we have often used the multi-factor continuity test outlined in *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986). These factors "include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of the distinct injuries." *Id*. at 975. While helpful, no one factor is dispositive and we should seek to achieve the "natural and commonsense" result, consistent with Congress' intent to eradicate long-term criminal conduct. *Roger Whitmore's Auto. Servs.*, 424 F.3d at 673; *Vicom, Inc. v. Harbridge Merchant Servs. Inc.*, 20 F.3d 771, 780 (7th Cir. 1994). For instance, when a complaint presents a distinct and non-recurring scheme with a built-in end point and provides no indication that Defendants have engaged or will engage in similar misconduct, the complaint does not sufficiently allege continuity even if the purported scheme takes years to unfold, involves a variety of criminal acts, and targets more than one victim. *Gamboa*, 457 F.3d at 708 (reversing the district court's finding of continuity even though the *Morgan* factors had been met).

Kaye has not satisfied closed-ended continuity because he has only sufficiently pleaded two predicate acts, the duration between which was only about seven months. We have repeatedly found this and greater periods of time insufficient. *See Midwest Grinding*, 976 F.2d at 1024 (collecting cases in which periods from several months to several years were found inadequate). When we look at Kaye's allegations in their entirely, it is obvious that there never was a substantial is no threat of future harm to Kaye, implicit or otherwise, and thus no continuity. Among the myriad of allegations in his complaint, the only identifiable harm to him personally stems from the sale of Kane Place. All of the acts alleged by Kaye were wrapped up in one general scheme to control the sale and development of specific city-owned land. Once this was accomplished, the scheme would have ended, and so his allegations do not meet RICO's continuity requirement. *See Gamboa*, 457 F.3d at 708. Because he failed to show continuity the district court correctly dismissed Kaye's complaint.

In addition, we agree with the district court that the real victim of the alleged land swap would be the City of Milwaukee, not Kaye. Kaye cannot show that he is a victim or that he suffered any injury. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006), and *James Cape & Sons Co. v. PCC Construction Co.*, 453 F.3d 396 (7th Cir. 2007), are determinative on this point. A civil RICO plaintiff must properly allege the RICO violation was the proximate cause of his injury. *James Cape*, 453 F.3d at 403 (citing *Anza*, 547 U.S. 451). The proper determination of proximate case is "whether the alleged violation led directly to the plaintiff's injuries." *Anza*, 547 U.S. at 461. Relying in large part on *Anza*, this court in *James Cape* found that the plaintiff's alleged loss of sales was not proximately caused by a bid-rigging scheme because a "court could never be certain whether [the plaintiff] would have won any of the contracts that were the subject of the conspiracy for any number of reasons unconnected to the asserted pattern of fraud." *James Cape*, 453 F.3d at 403 (citation and quotation omitted). Just like the plaintiff in *James Cape*, Kaye cannot demonstrate that the city would have sold him the Kane Place property had they not decided to sell it to Kohler. This leaves the City of Milwaukee, which "is fully capable of pursuing appropriate remedies" itself. *Id.* at 404 fn.6.

For the foregoing reasons we AFFIRM the decision of the district court in dismissing Kaye's amended complaint for failure to state a claim.[1]

### E.    Rule 11 Sanctions

We review the district court's imposition of Rule 11 sanctions for abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990); *Corley v. Rosewood Care Ctr. Inc. of Peoria*, 388 F.3d 990, 1013-14 (7th Cir. 2004). Rule 11 permits sanctions where a party presents the court with a pleading "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," is not "warranted by existing

---

[1] Because WOCCA employs the same legal structure as RICO, dismissal of all counts is appropriate.

law."   Fed. R. Civ. P. 11(b) & (c).   A district court abuses its discretion only "when no reasonable person could have taken the same view it adopted."  *Divane v. Krull Elec. Co.*, 319 F.3d 307, 314 (7th Cir. 2003).

The district court twice found that Kaye failed to plead a RICO cause of action.  After analyzing Kaye's original complaint, the district court found that Kaye, as an attorney, should have known that: (1) theft is not a RICO predicate act; (2) the complaint did not allege facts that constitute extortion; (3) fraud allegations must be pleaded with particularity; (4) the alleged bribery scheme did not constitute a pattern of racketeering; and (5) a RICO enterprise is defined by its structure, duration, and organization, not by its purpose and conduct.  After the district court gave Kaye the opportunity to amend, it dismissed his amended complaint for many of the same deficiencies, including his obvious inability to establish continuity.  Even after generously finding that Kaye sufficiently pleaded two predicate acts, which is debatable, it concluded that the two acts amounted to isolated events that did not demonstrate continuity and therefore did not amount to a pattern of racketeering.  The district court stated that it was awarding sanctions because Kaye, as an attorney, filed a RICO claim that was unsupported in fact or law.  It further stated that  sanctions were appropriate because Defendants incurred considerable expenses defending Kaye's serious yet demonstrably frivolous claims.

Although Kaye's alleges that Defendants engaged in unethical activities, it is not the kind of activity a RICO cause of action requires.  Congress enacted RICO to target long-term criminal activity, not as a means of resolving routine commercial disputes. *Midwest Grinding*, 976 F.2d at 1019, 1022.  This  well-established fact should have been clear to any attorney, including Kaye, after minimal research. Given the district court's thorough analysis of Kaye's obviously deficient RICO claim and its reasonable explanation for awarding sanctions, we see no reason to find that the district court abused its discretion.  Therefore, we AFFIRM.